# EXHIBIT G

GIBSON DUNN

Mitchell A. Karlan
Direct: +1 212.351.3827
Fax: +1 212.351.5254
MKarlan@gibsondunn.com

June 16, 2015

VIA ELECTRONIC MAIL

Chairman Daniel Schimmel, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178

Arbitrator Robert G. Cohen, Esq.
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, New York 10019-6142

Arbitrator Grant Hanessian, Esq
Baker & McKenzie LLP
452 Fifth Avenue
New York, New York 10018

> Re:    *Al Maya Trading Establishment v. Global Export Marketing Co., Ltd.*
>        <u>American Arbitration Association Case Number: 01-14-0001-3760</u>

Dear Chairman Schimmel and Members of the Panel:

I write on behalf of Claimant Al Maya Trading Establishment ("Al Maya") in response to the
letter from Respondent Global Export Marketing Co., Ltd.'s ("Gemco") requesting that Al Maya
supplement its document production.  As noted in my letter dated June 15, Gemco served five
sets of requests consisting of over 145 numbered and lettered parts and sub-parts (84 separate
requests and more than 60 lettered sub-parts)—many of which are extraordinarily broad, for
example seeking all documents on particular topics from the 1980s to the present.  These
requests were inconsistent with the Panel's instructions that "[t]he Panel and both sides agree
that there needs to be <u>focused</u> disclosure of documents, consistent with Rule 22 of the
Commercial Arbitration Rules of AAA."  Procedural Order 1 and Report on Preliminary Hearing
at 3 (emphasis added).[1]  On May 29, pursuant to the Procedural Timetable, the parties exchanged
responses and objections to one another's requests, along with responsive documents.

---

[1]    Accordingly, Al Maya objected to Gemco's Requests, *inter alia*, "to the extent that they [we]re not
reasonably focused in order to achieve an 'efficient and economical resolution of the dispute.'" (quoting Rule 22 of
the Commercial Arbitration Rules of AAA); and to "the extent they s[ought] documents and information that are not
'relevant and material to the outcome of [the] disputed issues' to be decided in the instant proceeding . . ." (quoting
Rule 22).

1

While the parties have been able to narrow the issues in dispute, there are four categories of documents with respect to which Gemco requests additional documents. As set forth in more detail below, Al Maya has no responsive documents or agrees to produce additional documents in three of the categories, and disagrees that the final category (particularly Part B.1 below) is relevant to the claims and defenses at issue in this arbitration. Accordingly, Al Maya believes there is a live dispute for the Panel to resolve only with respect to one of the categories, and it respectfully requests that the Panel decline to order Al Maya to produce those or additional documents.

**A.      Financial information at the Al Maya Trading Establishment level, not just the Al Maya International Ltd. (FZC) level.**

As counsel for Al Maya has already conveyed to counsel for Gemco, Al Maya does not maintain separate financial information at the Al Maya Trading Establishment level. Al Maya Trading Establishment has no books or accounting statements separate from those maintained at the parent Al Maya FZC level. This is evidenced by, among other things, the notes to the consolidated audited financial statements of the FZC entity and its subsidiaries, which list Al Maya Trading Establishment as one of the "subsidiaries [of the FZC entity] included in the [FZC entity's] consolidated financial statements." These notes were provided in Al Maya's initial production for the years 2003 through 2013. A copy of the relevant portions of the notes to Al Maya's Consolidated Financial Statements dated December 31, 2013 is attached hereto as <u>Exhibit A</u>. These financial statements also note that Al Maya Trading Establishment is one of the subsidiaries of the FZC entity that "form 'the Group.'"[2]

Gemco also requests certain supplemental FZC-level data.[3] While Al Maya continues to object to the breadth of Gemco's request, Al Maya has produced additional materials earlier today, including the requested listing and similar marketing agreements, and it is in the process of preparing and collecting additional data for production. It will produce these documents as soon as possible, but notes that these documents are relevant only to the respective experts' damages analysis, and should not delay the depositions of Al Maya's witnesses. Al Maya's expert report is due in mid-July, and Gemco's expert report is not due until late July.

**B.      Information on purportedly "improper" Al Maya Ltd. (FZC) sales.**

Gemco requests additional documents regarding: (1) Al Manal private label sales; (2) Heinz contracts; and (3) American Garden products sold by Al Maya outside of the U.A.E.

---

[2]      These facts strongly support Al Maya on what Gemco calls the entities issue.

[3]      Gemco relies on a July 2013 e-mail from an Al Maya salesperson to a counterpart at Gemco referencing a "negative [financial] picture" to suggest that the data Al Maya has produced is inaccurate or incomplete. This was a salesperson angling for better terms. He did not have access to, and could not contradict, the native data produced from Gemco's database.

Each is addressed in turn:

     1.     Documents relating to Al Maya Ltd. (FZC) sales of Al Manal-packed private label goods.

The issues in this arbitration are narrow, focusing primarily on the amount of damages owed to Al Maya as a result of Gemco's breaches of the 1999 Agency Agreement and its tortious conduct in interfering with Al Maya's contract and business relationships. Gemco's conduct underlying the breaches of contract and torts, including signing agreements with new distributors of American Garden products during the Agreement's term, terminating the agreement outside the contractually enumerated termination period, and refusing to supply Al Maya with American Garden products following the termination, is not in dispute. The relevant time period is, accordingly, mid-2013 to the present, except to the extent prior data and materials are relevant to the calculation of damages. Gemco, however, seeks to transform this proceeding into a review of the entire course of the parties' relationship, going back decades. There would be no basis for doing so even if this dispute were being heard in federal court. In arbitration, where the parties expressly agreed to arbitrate their dispute so it could be conducted in an efficient and cost-effective manner, it is even less appropriate.

Gemco's request for detailed data on Al Manal's balance sheets, cash flow statements, and income statements, among other data and documents, must be understood against this backdrop. Al Manal Food Processing Company ("Al Manal") is a subsidiary of Al Maya International Ltd. (FZC). Al Manal is responsible for manufacturing, processing, and packing Al Maya's private label food products. It was also responsible for packaging Gemco's American Garden brand of products, pursuant to Al Maya's responsibilities under the 1999 Agency Agreement.

The manufacturing, packaging, or sale of Al Maya's private label goods is not relevant to this proceeding. As the Panel noted in its first Procedural Order, "[t]he subject of this dispute is the 1999 Agency Agreement," Al Maya Procedural Order 1 and Report on Preliminary Hearing ("Procedural Order 1"), and discovery should be properly "focused" on relevant issues relating thereto. Since Al Manal was simply one of the Al Maya entities tasked with fulfilling Al Maya's obligations under the 1999 Agreement, documents concerning this entity are not relevant to the breach of the Agreement.

Moreover, Al Maya also objects to this request to the extent that it seeks information to support an argument that Al Maya breached the 1999 Agency Agreement by manufacturing and selling private label products. *See, e.g.*, June 15, 2015 letter from Saleem Mawji to the Panel at 5 ("Gemco constantly protested these private label sales as violating the Gemco-Ltd (FZC) arrangement); Gemco Answer to Demand for Arbitration at 9. Gemco's argument regarding Al Maya's sale of Heinz products ignores the plain language of the 1999 Agency Agreement. In the Agency Agreement, Al Maya agreed to be Gemco's exclusive distributor of American Garden brand products in the UAE and to promote the American Garden brand. Agency Agreement ¶¶ 2, 5. It indisputably did that. The Agreement does not limit Al Maya in any way from manufacturing, processing, packaging, or selling *other* brands of food products, including private label goods. This is particularly so with respect to private label goods, which, as the equivalent of store brands, were not direct competitors of American Garden products, which are considered

"top shelf" in the UAE. Therefore, documents regarding its sale of private label products are not relevant to this proceeding.

Furthermore, even assuming Al Manal and private label sales were relevant at all, Gemco already has in its possession documents that refer to Al Manal's role in manufacturing, processing, and packaging Al Maya's private label goods. It will have the opportunity to depose Al Maya witnesses on the role of Al Manal and its practices. It does not need additional documents, including detailed financials going back a decade, to make its argument about private label goods. In line with the Panel's instructions to conduct "focused disclosure of documents," Procedural Order 1, Al Maya does not believe it should be required to produce additional documents on this issue or to delay the proceedings for these documents.[4]

2.     Agreements entered into by Al Maya Ltd. (FZC) relating to the sale of Heinz products.

Al Maya objects to this request to the extent that it suggests that there was anything improper about Al Maya contracting to sell Heinz products. Gemco's argument regarding Al Maya's sale of Heinz products ignores the plain language of the 1999 Agency Agreement. In the Agency Agreement, Al Maya agreed to be Gemco's exclusive distributor of American Garden brand products in the UAE and to promote the American Garden brand. Agency Agreement ¶¶ 2, 5. It indisputably did that. The Agreement does not limit Al Maya in any way from manufacturing, processing, packaging, or selling *other* brands of food products, including Heinz. Al Maya maintains, therefore, that documents regarding its sale of Heinz products are not relevant to this proceeding.

Notwithstanding its objection, Al Maya produced in its initial production two letters dated November 2007 and February 2012 from Heinz which details the Heinz business relationship. In addition, Al Maya has now conducted a further review of its records and earlier today produced an agreement dated 2013 between Al Maya and Heinz. Al Maya does not believe it has any additional responsive agreements or contracts.

3.     Al Maya International Ltd. (FZC) sales of American Garden outside of the U.A.E.

Gemco's requests, "as to Ltd (FZC) sales outside of the U.A.E., 'documents setting forth identification of those customers and summarizing by year the amount of those sales.'" Gemco June 15, 2015 letter at 7. Al Maya International Ltd. (FZC) did not sell or transfer any American Garden goods outside the UAE, with one exception discussed below. It sold products to buyers within the UAE. Gemco's suggestion that Al Maya did otherwise is not supported by any evidence and is rank speculation. While Gemco in the past has suggested that some of the American Garden products purchased from Al Maya in the UAE might have later been transferred and resold by third-parties outside the UAE, that is not something that Al Maya had

---

[4]     In addition, since Al Maya is now a direct competitor to Gemco, internal correspondence between various Al Maya entities concerning the sale of its private label goods constitute confidential information that, if produced to Gemco, would threaten Al Maya's business. The confidential information within these documents include, but are not limited to, confidential customer or client information, trade secrets, and research and development.

4

any role in or has any records of.  It therefore cannot produce documents "setting forth identification of those customers and summarizing by year the amount of those sales."

The only American Garden products that Al Maya transferred outside the UAE were transfers of goods to its Oman affiliate at Gemco's request or with Gemco's knowledge.  An example of an e-mail from Gemco's Biju Panicker to Al Maya making such a request is attached hereto as Exhibit B.  Gemco was well aware of, and has records relating to, and such requests, which certainly cannot form the basis of an argument that the FZC entity "violated the arrangement by selling GEMCO products outside of the U.A.E."

**C.      Draft agreements and draft contracts between Al Maya Ltd. (FZC) and GEMCO.**

Al Maya has conducted a reasonable search of its records and it does not believe it is in possession or custody of any draft agreements or contracts between the FZC entity and Gemco other than those that Gemco already has in its possession because they were e-mailed by Al Maya to Gemco, or by Gemco to Al Maya.

**D.      Documents related to the development of the American Kitchen brand.**

As Gemco notes, soon after Gemco terminated the parties' relationship, Al Maya—through a company called Accura International, which is another member of the Al Maya family of companies—began to develop a brand called American Kitchen in an effort to replace some of the business it lost from Gemco's termination of the parties' contract and its refusal to continue to supply American Garden products to Al Maya.  Contrary to Gemco's suggestion, as a matter of law, Al Maya did not have a "duty" to develop a new brand from the ground up, including arranging for manufacturing, labeling, distribution, and shelf placement, in order to mitigate its damages, but it nevertheless did so in an effort to recoup some of the lost revenue from the loss of the American Garden brand.  Gemco tortuously interfered with Al Maya's development efforts by, among other things, placing calls to manufacturers telling them that it would not do business with them if they agreed to manufacture products for Al Maya.  Al Maya is working to gather documents evidencing its efforts to launch American Kitchen, and the delay thereof and additional costs occasioned by Gemco's tortious interference.  It will produce such documents as soon as possible, but notes that these documents are relevant to the respective experts' damages analysis, and should not delay the depositions of Al Maya's witnesses.  Al Maya's expert report is due in mid-July, and Gemco's expert report is not due until late July.

Conclusion

Gemco purports to ground its requests for additional documents in the Panel's e-mail of May 12, 2015, in which the Panel noted that "all issues will be addressed during the merits hearing on September 8-11, 2015."  This was obviously a reference to Gemco's request that the issue of the relationship of the Al Maya entities be addressed in a separate proceeding prior to the merits hearing, not an invitation for unbounded, expensive, and lengthy document discovery that override the Panel's earlier statement that "[t]he Panel and both sides agree that there needs to be focused disclosure of documents, consistent with Rule 22 of the Commercial Arbitration Rules of AAA."  Procedural Order 1 and Report on Preliminary Hearing at 3.  While Al Maya

has nevertheless endeavored to be responsive to Gemco's concerns, has supplemented its production, and has agreed to supplement its production further, it respectfully requests that the Panel decline to order the production of any additional materials.

Thank you for your attention to this matter.


Respectfully,


  /s/ Mitchell A. Karlan
Mitchell A. Karlan
Akiva Shapiro
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
 (212) 351-3827

*Attorneys for Claimant Al Maya Trading Establishment*

cc: Joseph Fleischman, Esq. & Saleem Mawji, Esq.,
        *Attorneys for Respondent Global Export Marketing Co.*

6

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT H

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT I



**Ruling on outstanding discovery disputes**

Schimmel, Daniel  to:  'jjfleischman@nmmlaw.com',                                    06/17/2015 05:54 PM
                          grant.hanessian@bakermckenzie.com

Cc:  "rgcohen@orrick.com", "AShapiro@gibsondunn.com"
       "mkarlan@gibsondunn.com", "SMawji@nmmlaw.com"

| | |
|---|---|
| From: | "Schimmel, Daniel" <dschimmel@foleyhoag.com> |
| To: | "'jjfleischman@nmmlaw.com'" <jjfleischman@nmmlaw.com>, "grant.hanessian@bakermckenzie.com" <grant.hanessian@bakermckenzie.com>, |
| Cc: | "rgcohen@orrick.com" <rgcohen@orrick.com>, "AShapiro@gibsondunn.com" <AShapiro@gibsondunn.com>, "mkarlan@gibsondunn.com" <mkarlan@gibsondunn.com>, "SMawji@nmmlaw.com" <SMawji@nmmlaw.com> |
| History: | This message has been replied to and forwarded. |

Dear counsel,

The Panel has reviewed all the letters regarding the outstanding discovery disputes.

**Depositions**
The depositions of fact witnesses shall go forward the week of June 22, and if both sides agree on June 29-30.

**Documents**
Al Maya's requests
Al Maya Request 4.  Respondent shall produce responsive documents, in particular those mentioned on page 3 of Mr. Karlan's letter, dated June 15, 2015.

Al Maya Request 6.  Respondent shall produce responsive documents, in particular those mentioned on page 3 of Mr. Karlan's letter, dated June 15, 2015, with the exception of documents responsive to topic 6(d) on page 3 of that letter.

Al Maya Request 8-10.  Respondent shall produce 2014 and 2015 year-to-date documents only to the extent of summarizing or reflecting profits and losses from sales of American Garden products in the UAE.  Respondents shall produce documents reflecting or regarding sales, if any, by ZAMS of American Garden products in the UAE, or any use of American Garden trademarks in the UAE.

Documents to be produced in Excel format:  Claimant shall produce financial data in native format if available.

Redactions:  To the extent this dispute is still outstanding, Respondent shall produce unredacted versions of the documents described on page 5 of Mr. Karlan's letter, dated June 15, 2015.

Unreadable documents.  Respondents shall provide the documents mentioned on page 5 of Mr. Karlan's letter in readable format, in particular the September 2013 MOU between Gemco and Lals

Trading Co.

Gemco's requests

(1) Financial Information at the AMTE level:

(a) Claimant shall produce profit and loss statements for the entities that sold American Garden brands products from January 1, 2010 through December 31, 2013.  To the extent any of its affiliates incurred expenses or costs relating to the sales, marketing, and distribution of American Garden products in the UAE, Claimant shall produce documents reflecting such expenses or costs.

(b) To the extent Claimant alleges that the termination of the relationship with Gemco resulted in losses of other business, Claimant shall produce the documents relating to that allegation.

(c) Claimant shall produce the documents addressing the profitability or lack of profitability of American Garden products.  The relevant time period is January 1, 2010 through December 31, 2013.

(2) Al Manal Private Label.  Claimant shall produce information responsive to requests 30D of Gemco's first document request.  The time period is January 1, 2010 through December 31, 2013.  Before ruling on Respondent's remaining requests on this topic, the Panel requests both sides to provide the authorities on which they rely for the proposition that the distributor of AG products in the UAE had a duty "not to manufacture and promote competing brands" (Respondent's letter, dated June 17, 2015, at 2), or instead was not limited "in any way from manufacturing, processing packaging, or selling *other* brands of food products, including private label goods" (Claimant's letter, dated June 16, at 3).  The parties should submit a two-page letter-brief on this topic and attach the relevant authorities by 5:00 pm on June 18, 2015.

(3)  The Panel notes that Claimant has produced two letters, dated November 2007 and February 2012, and an agreement dated 2013 addressing the business relationship between Al Maya Ltd. (FZC) and Heinz.  To the extent this dispute is still outstanding, Claimant shall produce any other agreements between Al Maya Ltd. (FZC) or any of its affiliates and Heinz regarding the sale of products in the UAE for which there was an American Garden counterpart or similar product.

(4) To the extent Al Maya Ltd. (FZC) sold or transferred any American Garden products outside of the UAE, or sold such products in the UAE knowing or having reason to believe they would be shipped outside of the UAE, Claimant shall produce documents in its possession, custody, or control identifying the customers and summarizing by year the amounts of those sales.  The relevant time period is January 1, 2010 through December 31, 2013.

(5) Draft agreements between Al Maya Ltd. (FZC) and Gemco.  Claimant will produce any such agreements that are in its possession, custody, or control.

(6) Documents relating to the development of the American Kitchen brand.  Claimant shall produce documents responsive to Gemco's requests 8 & 9 in its Second Request for Documents.

Any other disputed requests not addressed above are deemed denied.

To the extent the parties' experts believe that they do not have the data they need, the parties can write to the Panel by July 1, describe with specificity why the current information is not sufficient, and request a ruling on the production of <u>focused</u> additional documents.  The Panel reiterates that this is an arbitration under the Commercial Arbitration Rules, not a domestic litigation.

Best regards,

Daniel Schimmel
For the Panel


**From:** jjfleischman@nmmlaw.com [mailto:jjfleischman@nmmlaw.com]
**Sent:** Wednesday, June 17, 2015 3:01 PM
**To:** grant.hanessian@bakermckenzie.com
**Cc:** rgcohen@orrick.com; Schimmel, Daniel; AShapiro@gibsondunn.com; mkarlan@gibsondunn.com; SMawji@nmmlaw.com
**Subject:** Fw:


Joseph J. Fleischman, Esq.
Norris McLaughlin & Marcus, P.A.
t: 908.252.4265 | c: 201.658.3933 | f: 908.722.0755 | e: jjfleischman@nmmlaw.com
NJ Office: 721 Route 202-206 · P.O. Box 5933 · Bridgewater, NJ 08807-5933
Bridgewater, NJ | New York, NY | Allentown, PA


-----Forwarded by Joseph FLEISCHMAN/NMM on 06/17/2015 02:59PM -----
To: DSchimmel@foleyhoag.com, rgcohen@orrick.com
From: Joseph FLEISCHMAN/NMM
Date: 06/17/2015 02:59PM
Cc: AShapiro@gibsondunn.com, mkarlan@gibsondunn.com
Subject: Fw:


Joseph J. Fleischman, Esq.
Norris McLaughlin & Marcus, P.A.
t: 908.252.4265 | c: 201.658.3933 | f: 908.722.0755 | e: jjfleischman@nmmlaw.com
NJ Office: 721 Route 202-206 · P.O. Box 5933 · Bridgewater, NJ 08807-5933
Bridgewater, NJ | New York, NY | Allentown, PA


-----Forwarded by Joseph FLEISCHMAN/NMM on 06/17/2015 02:57PM -----
To: Joseph FLEISCHMAN/NMM@NMM
From: Janice ALDRICH/NMM
Date: 06/17/2015 02:51PM
Subject: (Untitled)

*(See attached file: Gemco - Panel 6-17-15.PDF)*

Janice Aldrich  |  Legal Assistant to Joseph J. Fleischman, Stuart J. Freedman and Keith D. McDonald
**Norris McLaughlin** & **Marcus, P.A.**
t: 908.252.4270  |  f: 908.722.0755  |  e: jaldrich@nmmlaw.com  |  _www.nmmlaw.com_
NJ Office: 721 Route 202-206 · Suite 200  |  P.O. Box 5933  |  Bridgewater, NJ 08807-5933
Bridgewater, NJ  |  New York, NY  |  Allentown, PA

*********************************************************************************************************

NOTICE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute it and notify the sender immediately by e-mail or by telephone at 908-722-0700 and delete the original message. Thank You. http://www.nmmlaw.com
*********************************************************************************************************


*********************************************************************************************************

NOTICE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute it and notify the sender immediately by e-mail or by telephone at 908-722-0700 and delete the original message. Thank You. http://www.nmmlaw.com
*********************************************************************************************************


Any tax advice included in this document and its attachments was not intended or written to be used, and it cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Foley Hoag LLP immediately – by replying to this message or by sending an email to postmaster@foleyhoag.com -- and destroy all copies of this message and any attachments without reading or disclosing their contents. Thank you.

For more information about Foley Hoag LLP, please visit us at www.foleyhoag.com.

# EXHIBIT J

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT K



Norris
McLaughlin
& Marcus, P.A.
ATTORNEYS AT LAW

515 West Hamilton Street
Suite 502
Allentown, PA 18101

P: 610-391-1800
F: 610-391-1805

July 1, 2015

_Via Email_

Daniel Schimmel, Esq.
Foley Hoag, LLP
Americas Tower
1177 Avenue of the Americas
5th Floor
New York, NY 10036

Robert G. Cohen, Esq.
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, New York 10019-6142

Grant Hanessian, Esq.
Baker & McKenzie LLP
452 Fifth Avenue
New York, New York 10018

Re:   Case Number: 01-14-0001-3760
      Al Maya Trading Establishment v. Global Export Marketing Co., Ltd.

Dear Gentlemen:

In this matter, the claimant is Al Maya Trading Establishment ("AMTE") and the respondent is Global Export Marketing Co., Ltd. ("GEMCO"). We submit this letter on behalf of GEMCO to address continuing deficiencies in AMTE's document production despite this Panel's Orders of June 17 and 19, 2015. As of this date, GEMCO still needs the below documents from AMTE as ordered by the Panel. Additional documents have just been received. We will review them expeditiously and notify the Panel if any changes to the below requests are necessary.

1.    **Items (1)(a) and 1(b) of the Panel's June 17 Order**

Recognizing that claimant asserts that it does not maintain, in the ordinary course of business, profit & loss statements specific to the American Garden brand, GEMCO has



45348-1

Bridgewater, NJ • New York, NY • Allentown, PA
www.nmmlaw.com

Messrs. Schimmel, Hanessian, Cohen
July 1, 2015
Pg. 2

repeatedly requested full profit and loss statements for any and all entities that sold American

Garden products (alongside other products) for the full years 2010 through 2013, and for any

related entities where expenses and costs relating to the sales, marketing, and distribution of

American Garden may appear.  These documents will allow GEMCO to independently

determine the incremental costs that AMTE would have incurred to make any incremental sales

of American Garden products.

In response, claimant produced Al Maya 3392-3395, a copy of which is attached, which

appears to be a document created for the purpose of responding to this request. However, for all

items below the gross profit level, GEMCO has no ability to verify the accuracy and

completeness of the allocations that appear to have been made on this litigation-created

document.  Specifically, we require line-by-line detail for items of expense included in the

following categories appearing on Al Maya 3392-95: other direct expenses, personnel expenses,

selling & distribution expense, administrative expenses, overhead & profit allocation.

The level of detail provided to date is insufficient to verify either the accuracy or

completeness of these amounts. By way of example, starting in 2011, GEMCO gave Al Maya

International Ltd (FZC) an 8% promotion and advertising allowance, so one would expect to see

the effect of that in this report. Yet, the line item for selling & distribution expense does not vary

as a percentage of sales from 2011 to 2012. There is no way to determine whether these expenses

are accurate or complete without more details as to the make-up of each line item. Other

variable-indirect costs on the sheet appear to be so low as to call into question the accuracy and

completeness of the information.

GEMCO also requests further details as to the rebates figures appearing in Al Maya

3392-3395.  AMTE previously produced item-wise rebates amounts for 2004-2013, along with

Messrs. Schimmel, Hanessian, Cohen
July 1, 2015
Pg. 3

certain rebate agreements. However, GEMCO requires actual customer-wise figures in order to

determine the accuracy and completeness of information previously produced.

In addition, to the extent AMTE intends to claim any element of damages with respect to

its "other products of GEMCO" and "other distribution business" as referenced in Al Maya

3392-5, GEMCO requires the same categories of documents described above.

GEMCO also requests that AMTE produce Al Maya 3392-3395 in native format, as

ordered by the panel, along with any linked Excel worksheets.

GEMCO also requests a sampling of Al Maya customer invoices for sales of AG

products to key accounts in order to verify, on a test basis, previously produced sales information

by product. Respondent requires the information in order to assess the reasonableness of a lost

sales claim. Specifically, AMTE should produce 6 sample invoices from each year 2010 to 2013

for each of the following customers: Carrefour, Emke (Lulu), Spinneys and Union Coop. These

invoices should represent a variety of different American Garden products.

**2.     Item 1(c) of the Panel's June 17 Order**

AMTE has not produced any correspondence or information addressing the profitability

or lack of profitability of American Garden. Despite AMTE witness testimony that such

discussions were common, no documentation regarding same has been provided. GEMCO

requests that this information be provided immediately consistent with this Panel's June 17

Order.

**3.     Item 2 of the Panel's June 17 Order**

The Panel ordered AMTE to produce information in response to request 30(D) of

GEMCO's first document request. 30(D) requires all emails and other correspondence between

Al Maya International, Ltd (FZC) and GEMCO. AMTE has produced less than twenty emails.

Messrs. Schimmel, Hanessian, Cohen
July 1, 2015
Pg. 4

GEMCO requests that this information be provided immediately consistent with this Panel's

June 17 Order.

4.      **Al Manal – Panel's June 19 Order**

The Panel ordered AMTE to produce information in response to request 36 in GEMCO's

first document request.  Request 36 requires all email and other correspondence relating to Ltd

(FZC)'s obtaining and selling its own private labels.  AMTE has produced only a handful of

emails and correspondence regarding Ltd (FZC)'s in-house brands, which include the Daily

Fresh, Real Value, and Royal Crown labels, during the relevant three year time period.  GEMCO

requests that this information be provided immediately consist with this Panel's June 17 Order.

In addition, AMTE has only produced audited balance sheets, cash flow statements, and

income statements for Al Manal.  GEMCO had requested, and this Panel had ordered, the

production of unaudited financial statements in addition to the audited statements.

Lastly, the Panel ordered AMTE to produce a summary by year of the monetary amount

paid as commissions or other incentives to Ltd (FZC) salesman for sales of private label goods

manufactured by Al Manal broken down by product category.  None has been received.

5.      **Additional request**

AMTE has produced a summary of sales of its in-house brands inside of the UAE and

outside of the UAE.  However, AMTE claims that a portion of the local Al Manal sales made in

the UAE were for goods to be shipped and sold outside of the UAE.  GEMCO has requested that

the Al Manal local sales information be separated into sales made for re-export versus sales

made in the rest of the UAE.  AMTE has yet to fulfill this request.  GEMCO requests that this

information be provided immediately.

Messrs. Schimmel, Hanessian, Cohen
July 1, 2015
Pg. 5

Conclusion

GEMCO needs the foregoing documents to defend itself against AMTE's $50 million

damage claim.

Very truly yours,

SALEEM MAWJI

cc:    Mitchell A. Karlan, Esq.
       Akiva Shapiro, Esq.

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT L

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT M



Joseph FLEISCHMAN  to: DSchimmel, rgcohen, grant.hanessian     07/07/2015 09:11 AM
Cc:  mkarlan, AShapiro, Saleem Mawji

| | |
|---|---|
| From: | Joseph FLEISCHMAN/NMM |
| To: | DSchimmel@foleyhoag.com, rgcohen@orrick.com, grant.hanessian@bakermckenzie.com, |
| Cc: | mkarlan@gibsondunn.com, AShapiro@gibsondunn.com, Saleem Mawji/NMM/NMM@NMM |
| History: | This message has been forwarded. |

Dear Panel:

We comment very briefly on AMTE's 6 plus, single spaced, page July 6, 2015 letter, replete with lengthy footnotes, on outstanding discovery.

1. <u>As to items (1)(a) and 1(b) of the Panel's June 17 order</u>

1. The Panel ordered ATME to produce full profit and loss statements for any and all entities that sold American Garden products (alongside other products for the full years 2010 through 2013), and for any related entities where expenses and costs relating to the sales, marketing, and distribution of American Garden products appear.

2. In response, ATME produced Al Maya 3392-3395, which is newly created for this litigation, but it has complied with the Panel's order.

3. ATME does not dispute that Al Maya 3392-3395 is newly created for this litigation.

4. Newly-created, litigation-created Al Maya 3392-3395 goes to the core of AMTE's lost profits calculations.

5. Al Maya 3392-3395 purports to allocate costs and expenses.

6. GEMCO's requests are extremely targeted.   GEMCO needs the underlying information set forth in the newly-created, litigation-created Al Maya 3392-3395, and related information set forth in our July 1, 2015 letter, to verify the accuracy and completeness of the allocations that appear to have been made on this litigation-created document.

**7. ATME's allocation of expenses on Al Maya 3392-3395 show the underlying information is available .**

**8. AMTE, in over 6 single spaced pages, with lengthy footnotes, does not deny the underlying information is available.**

9. EMCO's requests are only "new" only in the sense that it needs the documents on which AMTE relied in its newly-created, litigation-created Al Maya 3392-3395.

10. In lengthy footnote 1, AMTE praises its own document production.  But AMTE just did data dumps to give the veneer of compliance and to try to deflect the Panel from its non-production of GEMCO's targeted requests as to the newly-created, litigation-created Al Maya 3392-3395.  For example, the "500,000 row" documents go only to the gross profit level.

11. AMTE asserts its financial document production is greater than GEMCO's.  We were not aware that discovery is a comparative exercise.  More importantly, it is ATME, not GEMCO, that is seeking $50 million in damages. (In a similar vein, AMTE's lengthy footnote 3 on GEMCO's payment to FM is also an attempted diversionary tactic; GEMCO is not seeking any damages.)

As to item 4, Al Manal-Panel's June 19 order

      AMTE has purposefully created a search that would yield little or no information. AMTE admits it used only used only the terms "private label" and "al manal" when searching for "all emails and other correspondence relating to Ltd. (FZC's) obtaining and selling its own private label products" during the January 1, 2010 through December 31, 2013 time period. At his deposition, the man who runs Al Manal, Nandi Pagarani, testified that Al Manal has three private labels: Daily Fresh, Royal Crown, and Real Value. ATME is advising the Panel that it used none of those terms in its search.   It is therefore not surprising that AMTE produced less than a handful of emails during the entire three period.

Joseph J. Fleischman, Esq.
Norris McLaughlin & **Marcus, P.A.**
t: 908.252.4265 | c: 201.658.3933 | f: 908.722.0755 | e: jjfleischman@nmmlaw.com
NJ Office: 721 Route 202-206 · P.O. Box 5933 · Bridgewater, NJ 08807-5933
Bridgewater, NJ | New York, NY | Allentown, PA

*****************************************************************************************************
NOTICE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute it and notify the sender immediately by e-mail or by telephone at 908-722-0700 and delete the original message. Thank You. http://www.nmmlaw.com
*****************************************************************************************************

# EXHIBIT N



**RE: Outstanding discovery issues - AMTE/GEMCO**

Schimmel, Daniel  to:  'Shapiro, Akiva', Hanessian, Grant , Cohen, Robert G          07/08/2015 09:56 AM

Cc:  "jjfleischman@nmmlaw.com", "SMawji@nmmlaw.com"     , "Karlan, Mitchell A."

| | |
|---|---|
| From: | "Schimmel, Daniel" <dschimmel@foleyhoag.com> |
| To: | "Shapiro, Akiva'" <AShapiro@gibsondunn.com>, "Hanessian, Grant" <Grant.Hanessian@bakermckenzie.com>, "Cohen, Robert G" <rgcohen@orrick.com>, |
| Cc: | "jjfleischman@nmmlaw.com" <jjfleischman@nmmlaw.com>, "SMawji@nmmlaw.com" <SMawji@nmmlaw.com>, "Karlan, Mitchell A." <MKarlan@gibsondunn.com> |
| History: | This message has been forwarded. |

Dear counsel,

The Panel has reviewed the parties' submissions and rules as follows.

1. Claimant shall produce Al Maya 3392-3395 in native format.

2. As requested in Respondent's letter, dated July 1, 2015, Claimant shall produce six sample invoices from each year 2010 to 2013 for each of the following customers: Carrefour, Emke (Lulu), Spinneys, and Union Coop. The invoices should represent a variety of different AG products.

3. The Panel confirms that its ruling regarding Request 30 of Gemco's first request of documents related to emails and correspondence between Al Maya International, Ltd (FZC) and Al Manal Food Processing Company, not Gemco.

4. Claimant's letter, dated July 6, 2015, describes that it complied with the Panel's June 19 ruling "by conducting a search of emails and other documents from that time period [January 1, 2010 through December 31, 2013] collected from Deepak Pagarani and Ashok Purswani, as well as additional Al Maya employees, for the phrases 'private label' or 'Al Manal.'" The Panel requests Claimant to submit a letter providing the following information: (1) identify the additional Al Maya employees whose files were searched, and on what basis they were selected, (2) explain why Claimant did not include "Daily Fresh," "Royal Crown," and "Real Value" as search terms, and (3) describe generally why Claimant believes its search was sufficient. The Panel asks Claimant to submit this letter by July 9.

5. Any other disputed requests not addressed above are deemed denied. Thank you.

Best regards,

Daniel Schimmel
For the Panel

Daniel Schimmel  |  Partner

**Foley Hoag LLP**
1177 Avenue of the Americas, 5th Floor
New York, NY 10036

Tel: 646-927-5520
Fax: 646-927-5599
www.foleyhoag.com

**From:** Shapiro, Akiva [mailto:AShapiro@gibsondunn.com]
**Sent:** Monday, July 06, 2015 7:20 PM
**To:** Schimmel, Daniel; Hanessian, Grant; Cohen, Robert G
**Cc:** jjfleischman@nmmlaw.com; SMawji@nmmlaw.com; Karlan, Mitchell A.
**Subject:** RE: Outstanding discovery issues - AMTE/GEMCO

Dear Chairman Schimmel,

Al Maya's response to Gemco's July 1 letter is attached, along with the exhibits thereto in a separate PDF.

Respectfully,

**Akiva Shapiro**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.3830 • Fax +1 212.351.6340
AShapiro@gibsondunn.com • www.gibsondunn.com

**From:** Schimmel, Daniel [mailto:dschimmel@foleyhoag.com]
**Sent:** Thursday, July 02, 2015 11:25 AM
**To:** Shapiro, Akiva; Hanessian, Grant; Cohen, Robert G
**Cc:** jjfleischman@nmmlaw.com; SMawji@nmmlaw.com; Karlan, Mitchell A.
**Subject:** RE: outstanding discovery issues - AMTE/GEMCO

Dear counsel,

This is fine with us.  Enjoy the holiday weekend.

Best regards,

Daniel Schimmel
For the Panel

**From:** Shapiro, Akiva [mailto:AShapiro@gibsondunn.com]
**Sent:** Thursday, July 02, 2015 11:08 AM
**To:** Schimmel, Daniel; Hanessian, Grant; Cohen, Robert G
**Cc:** jjfleischman@nmmlaw.com; SMawji@nmmlaw.com; Karlan, Mitchell A.
**Subject:** RE: outstanding discovery issues - AMTE/GEMCO

Dear Chairman Schimmel:

Al Maya would like to respond to Gemco's correspondence of yesterday afternoon, as it believes it has fully complied with its document production obligations. Given the holiday weekend and the fact that Gemco noted in its letter that it is still evaluating some of the produced data, would it be acceptable to the Panel for Gemco to update the Panel with any revisions to its letter by Monday morning, and for Al Maya to submit its response by Monday afternoon (July 6)?

Also, we would note that Al Maya has not yet received communications responsive to its Requests Nos. 4 & 6, in particular those mentioned on page 3 of Mr. Karlan's June 15 letter, which the Panel instructed Respondents to produce (with the exception of topic 6(d)). Respondent's counsel told us that we would receive these materials yesterday morning (see attached), which we were hoping would resolve the issue without needing to involve the Panel, but we have not yet received them and do not want to lose Al Maya's right to object if, when they are finally produced, they are deficient.

Thank you for your attention to this matter.

Respectfully,

**Akiva Shapiro**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.3830 • Fax +1 212.351.6340
AShapiro@gibsondunn.com • www.gibsondunn.com

**From:** SMawji@nmmlaw.com [mailto:SMawji@nmmlaw.com]
**Sent:** Wednesday, July 01, 2015 4:27 PM
**To:** dschimmel@foleyhoag.com; Hanessian, Grant; Cohen, Robert G
**Cc:** jjfleischman@nmmlaw.com; Shapiro, Akiva
**Subject:** outstanding discovery issues - AMTE/GEMCO

Attached please find correspondence regarding this matter.

Saleem Mawji, Esquire
**Norris, McLaughlin & Marcus, P.A.**
515 West Hamilton Street, Suite 502
Allentown, PA 18101
t: 484-765-2231 f:610-391-1805 e:smawji@nmmlaw.com

NJ:  721 Route 202-206, Box 5933, Bridgewater, NJ 08807
NY:  875 Third Avenue, 8th Floor, New York, NY 10022

Pursuant to Treasury Regulations, any U.S. Federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

Notice: Unless explicitly and conspicuously designated as 'E-Contract Intended', this e-mail does not constitute a contract offer, a contract amendment, or an acceptance of a contract offer. This e-mail does not constitute consent to the use of sender's contact information for direct marketing purposes or for transfers of data to third parties.

Notice: This message and any attached file is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. Nothing in this e-mail message should be construed as a legal opinion. If you have received this communication in error, please notify me immediately by reply e-mail and delete all copies of the original message. Thank you.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Any tax advice included in this document and its attachments was not intended or written to be used, and it cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Foley Hoag LLP immediately -- by replying to this message or by sending an email to postmaster@foleyhoag.com -- and destroy all copies of this message and any attachments without reading or disclosing their contents. Thank you.

For more information about Foley Hoag LLP, please visit us at www.foleyhoag.com.

# EXHIBIT O

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT P

AMERICAN ARBITRATION ASSOCIATION

AL MAYA TRADING ESTABLISHMENT )
)
)
V. )        CASE NO. 01-14-0001-3760
)
GLOBAL EXPORT MARKETING CO. LTD )

### DECLARATION OF SANGRAM GANDHI

I, Sangram Gandhi, declare as follows:

1.      I am currently employed by the Al Maya Group ("Al Maya') as an Accounts Manager.  In that role, I am familiar with Al Maya's financial records and its recordkeeping systems and procedures.

2.      To the best of my knowledge, I attest to the accuracy of the information contained in the document attached hereto as Exhibit A.  After Global Export Marketing Co. Ltd. ("Gemco") terminated its relationship with Al Maya, various retailers required that Al Maya pay them higher rebates because of the decrease in volume of product supplied by Al Maya.

3.      To the best of my knowledge, I also attest to the accuracy of the information contained in the document attached hereto as Exhibit B.  Under the category Variable Indirect Cost, other direct expenses include damages, expiry, and stock shortages (allocated on the basis of sales); personnel expenses include salaries and benefits to employees working exclusively for American Garden and related products; finance charges include interest charges for inventory and accounts receivable; and selling and distribution expenses include listing fees, promotional

expenses, and incentives.  Variable Other Income includes exchange gain and discounts received from suppliers.

4.      During the course of the parties' relationship, Al Maya incurred various investments and expenses relating to advertisements, promotions and the like to develop the American Garden brand and other brands supplied by Gemco in the U.A.E., and to promote the sales in the U.A.E. of American Garden and other brands supplied by Gemco to Al Maya. These marketing and brand development investments and expenses were paid for by Al Maya, and Gemco reimbursed Al Maya for a portion of the cost.  In addition, during the course of the parties' relationship, Al Maya incurred listing fees, which are required by retailers in the U.A.E to list any new product.  I understand that Al Maya incurred these investments, expenses, and fees from the beginning of the parties' relationship.  However, Al Maya's records of these investments, expenses, and fees are available only from the year 2004 forward.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 12, 2015
Dubai, United Arab Emirates

_____
Sangram Gandhi
12/Jul/2015.

2

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT Q

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT R

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL

# EXHIBIT S

# Al Maya Arbitration Fees and Costs (in USD)

## AAA

| Invoice Date | Amount |
|---|---|
| 9/8/2014 | 4500 |
| 12/3/2014 | 14300 |
| 3/12/2015 | 6700 |
| 6/8/2015 | 6000 |
| 8/11/2015 | 79000 |
| 10/6/2015 | 1500 |
| 10/12/2015 | 25000 |
| Total | 137000 |

## Cornerstone

| Invoice Date | Amount |
|---|---|
| 11/21/2014 (October bill) | 6689 |
| 12/9/2014 (November bill) | 16952.5 |
| 1/9/2015 (December bill) | 5243.5 |
| 3/10/2015 (February bill) | 1004.77 |
| 4/15/2015 (March bill) | 24518.5 |
| 5/18/2015 (April Irwin time) | 1062.5 |
| 5/18/2015 (April consultant bill) | 32634.5 |
| 6/17/2015 (May consultant bill) | 1062.5 |
| 6/17/2015 (May Irwin time) | 48794.93 |
| 7/20/2015 (June Irwin time) | 24187.5 |
| 7/20/2015 (June consultant bill) | 177800.5 |
| 10/27/2015 (July bill) | 257814.02 |
| 10/27/2015 (August bill) | 49332.84 |
| 12/17/2015 (September bill) | |
| Total | 110561.04 |

757658.6

## Court Reporters*

| Invoice Date | Amount | Notes |
|---|---|---|
| 6/30/2015 | 3037.82 | Paulraj and Fazal depositions |
| 6/25/2015 | 2648.31 | Panicker deposition |
| 7/16/2015 | 1142.75 | Purswani deposition (Cittone) |
| 7/16/2015 | 697.25 | N. Pagarani deposition (Cittone) |
| 7/16/2015 | 1036.75 | Gopalani deposition (Cittone) |
| 7/16/2015 | 1819.25 | D. Pagarani deposition (Cittone) |
| 7/10/2015 | 1136.9 | Egan deposition |
| 7/22/2015 | 874.53 | Egan deposition |
| 8/12/2015 | 1254.15 | Loftus deposition |
| 9/23/2015 | 2520.21 | Hearing Day 1 |
| 9/24/2015 | 3387.38 | Hearing Day 2 |
| 9/25/2015 | 3060.86 | Hearing Day 3 |
| 9/28/2015 | 3078.76 | Hearing Day 4 |
| | 25694.92 | |

*Veritext unless otherwise noted

**1 USD = AED 3.6735 exchange rate

### Notes:

Where Gibson Dunn billed Al Maya for services performed by and fees and/or costs incurred by Veritext and/or Cornerstone, those amounts were deducted from the Gibson Dunn bills but included in the corresponding "Cornerstone" or "Court Reporters" bill.

Where Gibson Dunn billed Al Maya for services performed by and fees and/or costs incurred by Veritext in connection with the federal proceeding between September 2014 and the present, those charges have been deducted in the above chart.

Al Maya remitted payment to Veritext for the entire cost of the hearing transcript with the understanding that those costs would be allocated between it and Gemco as part of the Panel's award.

## Gibson Dunn

| Amount | Invoice Date |
|---|---|
| 8917 | 9/9/14 (August arbitration time) |
| 32,934.60 | 10/2/2014 (September bill) |
| 28746.12 | 11/10/2014 (October bill) |
| 32097.5 | 12/2/2014 (November bill) |
| 13653.08 | 1/9/2015 (December bill) |
| 8596.38 | 2/18/2015 (January bill) |
| 21143.49 | 3/5/2015 (February bill) |
| 27416.75 | 4/6/2015 (March bill) |
| 44255.29 | 5/11/2015 (April bill) |
| 89375.77 | 6/17/2015 (May bill) |
| 38815.2 | 7/15/2015 (June bill) |
| 245900.3 | 8/12/2015 (July bill) |
| 354363.3 | 9/2/2015 (August bill) |
| 394669.1 | 10/2/2015 (September bill) |
| 155784.8 | 11/3/2015 (October bill) |
| 118448.3 | 12/7/2015 (November bill) |
| 73122.64 | TBD - 1/2016 (December pre-bill) |
| 2038240 | Total |

## Other (Total Converted from AED to USD**)

| Date | Amount |
|---|---|
| 10/7-10/16/2014 (S. Bardia - attorney) | 25000 AED |
| 12/15-12/24/2014 (S. Bardia - attorney) | 5000 AED |
| 3/31-4/9/15 (S. Bardia - attorney) | 20000 AED |
| 6/22-6/30/15 (S. Bardia - attorney) | 20000 AED |
| 5/21-5/29/15 (S. Bardia - attorney) | 20000 AED |
| 7/24-7/29/15 (S. Bardia - attorney) | 32500 AED |
| 10/8/2015 (Shailendra Bardia - attorney) | 28450 AED |
| Travel expenses | 308,851 AED |
| Total (Converted from AED to USD) | 125166.9144 |

Total in USD — 3,267,444

# EXHIBIT T

AMERICAN ARBITRATION ASSOCIATION

|  | : | Case Number: 01-14-0001-3760 |
|---|---|---|
| AL MAYA TRADING ESTABLISHMENT, | : | |
| Claimant, | : | |
| | : | |
| v. | : | |
| GLOBAL EXPORT MARKETING CO., LTD. | : | |
| Respondent. | : | |
| | : | |
| | : | |

MEMORANDUM OF LAW OF GLOBAL EXPORT MARKETING CO., LTD.

NORRIS McLAUGHLIN & MARCUS, P.A.
721 Route 202/206,  Suite 200
Bridgewater, New Jersey  08807

Attorneys for Global Export Marketing Co., Ltd.

On the Brief:
  Joseph J. Fleischman
  Saleem Mawji

period of time closest to the period for which a lost profit calculation had to be made.  Nor did she use Ltd (FZC)'s purported actual contribution margin for 2012 for either American Garden or the other GEMCO brands.   Rather, Irwin averaged the growth rates from 2008 to 2011 and arrived at a growth rate of 17% for American Garden products, even though the years 2008 to 2011 did not replicate the market conditions of 2012, the last full year before the termination. Her reasoning for ignoring 2012 for American Garden: "prices were raised, but Al Maya was not allowed to pass those increase [sic] in prices to the customers.  As such the company purchased less and sold less." Irwin Deposition 44:8-25; 45:1-23.  (Arb. Ex. 17).  Irwin's basis for this reasoning that a distributor doing business in the UAE for at least ten years could not raise its prices and so decided to slow its own growth was a representation from Ltd (FZC)'s counsel.

Irwin spoke to no one from Ltd (FZC).  In fact, Irwin was adamant in her deposition that she received no representation or information **on any subject** from Ltd (FZC): "As I mentioned several times I have not spoken with anyone at the client." Irwin Dep  46:11-12.  (Arb. Ex. 17).

Further, Irwin used a 13% incremental profit percentage for American Garden products and 11% on GEMCO's other branded products, relying on historical contribution margins Ltd (FZC) provided to her two weeks before her report was issued – again without having even identified the preparer of the information that was created for the purposes of this arbitration or personally discussing it with anyone at Ltd (FZC).  Her 13% and 11% incremental margins were averages of 2004 to 2012 contribution margins for the respective product lines, as calculated by Ltd (FZC).  For the last three months of 2013, Irwin calculated lost profits of $563,000 for American Garden (Irwin report Exhibit 2D at p. 1) and $267,000 for other brands (Irwin report Exhibit 2D at p. 2) for a total of $830,000.

45

# EXHIBIT U

AMERICAN ARBITRATION ASSOCIATION

|  |  |
|---|---|
| | :    Case Number: 01-14-0001-3760 |
| AL MAYA TRADING ESTABLISHMENT, | : |
| | : |
| Claimant, | : |
| | : |
| | : |
| v. | : |
| | : |
| GLOBAL EXPORT MARKETING CO., LTD. | : |
| | : |
| Respondent. | : |
| | : |
| | : |
| | : |

## REBUTTAL MEMORANDUM OF LAW OF GLOBAL EXPORT MARKETING CO., LTD.

NORRIS McLAUGHLIN & MARCUS, P.A.
721 Route 202/206, Suite 200
Bridgewater, New Jersey 08807

Attorneys for Global Export Marketing Co., Ltd.

On the Brief:
  Joseph J. Fleischman
  Saleem Mawji

Arb. Ex. 83, but claimant fails to mention that the more important NTDE-GEMCO letter of

intent, covering the key accounts, Arb. Ex. 167, has no term and no termination provision at all.)

To the extent length of notice is at all pertinent, we note *Supply & Building Co. v. Estee*

*Lauder International*, 1999 WL 178783 (S.D.N.Y. 1999), where the court found reasonable a

sixty day termination provision in a contract between a New York company and a Kuwaiti

distributor in a relationship that lasted twenty-six years.  1999 WL 178783, at *3-4.  (The court

also addressed that reassurance of no termination is not a fraud and that breach of a promise not

to terminate sounds in contract, not fraud.)  *Id.* at *5.

POINT II

AS TO LTD (FZC)'S POINT B THAT GEMCO'S ALLEGED MISCONDUCT
CAUSED LTD (FZC) TO SUFFER MILLIONS OF DOLLARS OF DAMAGES.
(Ab 27-36)

A.    As to claimant's sub headings as to lost profits (1), unrealized economic benefit of brand
      development expenses and listing fees (2), unpaid debit notes (3), inventory losses (4),
      losses related to rebates (5), and prejudgment interest (7), Ab 27-36

As to claimant sub headings (1), (2), (4), (5), and (7), Ab 27-36, GEMCO refers to Gb

Point IV, 42-48.  There, GEMCO specifically addresses the items that claimant raises now.

In addition, GEMCO also notes the following.

The expert report of Carlyn Irwin ("Irwin"), claimant's expert, has a fundamental flaw.  It

is built upon the July 12, 2015 declaration of Sangram Gandhi, an accounts manager of Al Maya

Group.  (Arb. Ex. 64).  Irwin, however, never spoke to Gandhi or anyone else from Ltd (FZC)

and did not review Ltd (FZC)'s underlying data.  See Expert Report of Maureen Loftus,

GEMCO's expert, ("Loftus Report") 11-14 (Arb. Ex. 14).

Gandhi's declaration is not trustworthy.  Gandhi's declaration did not reveal his

background and qualifications; what, if any, standards he applied to his work; any instructions he

9

was given as to which elements of cost should be assessed; his definition of key terms used in the analysis such as "direct costs," "variable indirect," and "fixed indirect"; how he has made the determination of which costs fell into which categories, and if he did so on his own; whether his analysis was a complete representation of all costs associated with Al Maya's food distribution division, and if it is, how he made that determination; and whether data were missing, and if they were, what allowances were made for their absence. Loftus Report at 11 (Arb. Ex. 14).

Irwin did not ask for and did not have supporting documentation for many of the cost items and allocations in S. Gandhi's analysis. Loftus Report at 12 (Arb. Ex 14).  In addition, S. Gandhi's analysis raised many red flags that Irwin ignored.  Loftus Report at 12-14 (Arb. Ex. 14).

Unlike Irwin, Loftus did seek the underlying documents.  However, claimant refused GEMCO's request for them, and the panel denied GEMCO's application for production.  See GEMCO's July 1, 2015 letter to the panel and the panel's decision of July 8, 2015.  (Arb. Exs. 318 and 319).  Although Irwin could have reviewed the underlying documents supposedly supporting Gandhi's summary but did not, Loftus just did not have that opportunity at all.

Although the Supreme Court has instructed district courts to focus "on [the] principles and methodology" employed by the expert and "not on the conclusions that they generate," "nothing in either *Daubert v. Merrell Dow Pharmaceuticals* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Laumann v. Nat'l Hockey League*, 2015 WL 3542322, at *2 (S.D.N.Y. May 29, 2015) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999)).

To be admissible, the proposed expert testimony must be based **"on a reliable foundation."** *Laumann*, 2015 WL 3542322, at *2 (citing *Daubert*, 509 U.S. at 597).  (Emphasis added.)  In assessing reliability, the trial judge should consider whether (i) the testimony is based upon sufficient facts or data, (ii) the testimony is the product of reliable principles and methods, and (iii) the witness has reliably applied the principles and methods to the facts of the case.  *Id.* (citing Fed. R. Evid. 702).

In light of Irwin's failure to verify the veracity of these underlying documents, Irwin Dep. 16:13-16; 70:10-14 (Arb. Ex. 17), and in light of Loftus' inability to do so, if the panel does not reject the Irwin report entirely, at the very least the panel should accept the conclusions and inferences that Loftus draws.  *Dreyer v. Ryder Auto. Carrier Grp.*, 2005 WL 1074320, *26 (W.D.N.Y. Feb. 9, 2005) (an expert opinion to be excluded where the data relied upon is "neither verified as to its accuracy and completeness or, if from a recognized source, is 'speculative in nature and therefore inherently insufficient.'"); *Kam Hing Enters., Inc. v. Wal–Mart Stores, Inc.*, 359 Fed. App'x. 235, 237-38 (2d Cir. Jan. 6, 2010) (District Court did not abuse discretion in precluding testimony about costs where defendant had produced only summaries of costs and not underlying data upon which summaries were based); *U.S. for Use of and Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 163 (2d Cir. 2006) (upholding a decision to allow expert summaries only where the District Court admitted the summaries because the supporting documentation was made available to the defendant).

The foregoing addresses claimant sub headings, 1, 2, 4, and 5, all of which GEMCO also discusses in Gb, Point V, 42-47.

As to debit notes (sub heading 3), after further review GEMCO has determined that it owes $6,301.66.  Egan section BB, ¶¶ 474-505.

As to prejudgment interest (sub heading 7), Loftus advised in her report that at the panel's direction she will calculate prejudgment interest, if any is to be awarded.  Loftus Report 33 (Arb. Ex. 14).

B.      As to claimant's sub heading as to expenses as a result of GEMCO's refusal to arbitrate (sub heading 6), Ab 34

     1.      Litigation was not frivolous and was an enormous burden to GEMCO

Claimant argues the litigation was frivolous and vexatious, cost it a lot of money, and affected the operations of its nearly one-half billion dollar conglomerate operation.  Ab 35 .  It argues that this entitles it to recovery of attorneys' fees and expenses incurred in connection with the litigation.  Ab 34-36.

GEMCO was not the one engaging in frivolous litigation.  Moreover, claimant ignores the expense and hardships that Ltd (FZC), a far larger company, imposed on GEMCO by luring it into the "gotcha" litigation that Ltd (FZC) concocted in the first place.

GEMCO simply did not have the resources to engage in anything frivolous, particularly against a much larger adversary.  Egan rebuttal ¶¶ 14-17.  Unlike Ltd (FZC), GEMCO, in its twenty seven years, has never been involved in any litigation except for this one into which Ltd (FZC) entrapped it.

GEMCO had, and still has, a good faith, more correctly the absolute, belief that the Agency Agreement was a fabrication.  See Egan section W, ¶¶ 428-33 setting forth four reasons for that view.  On the other hand, D. Pagarani's Ltd (FZC) "gotcha" stratagem shows that if anyone engaged in bad faith regarding the Agency Agreement, it was claimant.

     2.      Claimant's expert reports

Claimant refers to two experts it hired.  Ab 17-19.  In fact, those two experts expressed their doubts about the Agency Agreement, as set forth below.

12

# EXHIBIT V

# DOCUMENT WITHHELD
# PENDING REQUEST TO
# FILE UNDER SEAL

# EXHIBIT W

Page 1071

1

2    AMERICAN ARBITRATION ASSOCIATION

3    Case No. 01-14-0001-3760

4    - - - - - - - - - - - - - - - - - - -x

5    AL MAYA TRADING ESTABLISHMENT,

6                       Claimant,

7        -against-

8    GLOBAL EXPORT MARKETING CO., LTD.,

9                       Respondent.

10   - - - - - - - - - - - - - - - - - - -x

11                    1540 Broadway

                      New York, New York

12

                      January 12, 2016

13                    2:09 p.m.

14

15              ARBITRATION PROCEEDINGS

16                    VOLUME V

17               (Pages 1071 - 1205)

18

19   BEFORE:

20     DANIEL SCHIMMEL, ESQ., Chairperson

21     ROBERT G. COHEN, ESQ., Arbitrator

22     GRANT HANESSIAN, ESQ., Arbitrator

23

24

25   REPORTED BY:  Ashley Shugar

Page 1164

- CLOSING ARGUMENTS -
1
2    averaged it to come up with some
3    higher numbers and our adversary
4    referenced them in his presentation.
5    But, in fact, in the year before
6    termination, the contribution margin
7    on American Garden was 10 percent.
8         What Ms. Loftus then did is
9    bring it down 2 percent to 8 percent.
10   And why she did that because we could
11   never get to the bottom, and we still
12   haven't gotten to the bottom, of the
13   source document here.  This is
14   something that was created for this
15   arbitration.  We have asked for the
16   underlying records -- underlying
17   books and records of Ltd.  And we
18   engaged the Panel on this back in
19   June and July and the adversary said
20   we don't have the records at that
21   level.
22        We then asked for certain other
23   kinds of backup.  The Panel denied
24   that request.
25        What then came with the expert

Page 1165

- CLOSING ARGUMENTS -
1
2    report what I call Gandhi 64,
3    which was not a business record,
4    whereas those two e-mails saying:
5    Hey, wake up, we're not going to get
6    any money, what I call exhibits --
7    underlying Exhibits 132 and 133, this
8    is a document prepared by a mystery
9    man.
10        We dont' know where the buckets
11   were, where the allocations were,
12   what was put under various types of
13   costs.  We don't know.  And the
14   adversary's expert could have had
15   access to these people in Dubai, but
16   we couldn't, especially after the
17   Panel's ruling that we couldn't get
18   the underlying information.  And what
19   you have there is a document, what I
20   call 64, created for the purposes of
21   this arbitration.
22        So when you look at all of the
23   vagaries and you juxtapose it to
24   those two contemporaneous business
25   documents, e-mails, hey, wake up,

Page 1166

- CLOSING ARGUMENTS -
1
2    we're not making money, Ms. Loftus
3    took down the contribution margin
4    that Gandhi references -- we don't
5    know who prepared that.  We don't
6    know who prepared that.  She brought
7    it down two notches to 8 percent,
8    which was entirely reasonable given
9    that the adversary says we should
10   drop the whole Loftus report.
11        Well, we should throw out the
12   whole Irwin report, because it was
13   built on this 64 that is not spewed
14   out from a machine, it was produced
15   by a human; that human is still
16   unknown, still unidentified.
17        So Loftus came up with 8
18   percent contribution margin, which I
19   think is pretty reasonable given the
20   worthlessness of 64, and then used
21   growth, which she did know.  She did
22   know sales.  Those she would know.
23   She, then, used 10 percent.  She,
24   then, used the actual growth,
25   8 percent in the year before, and

Page 1167

- CLOSING ARGUMENTS -
1
2    came up with, for the three-month
3    period, approximately $500,000 for
4    that three-month period, for the
5    period for which we supposedly didn't
6    give notice.
7         I'll come back to a point that
8    we made in our opening brief, which
9    is, going to your point, Mr. Cohen,
10   about material breach.  We say we
11   didn't.  Given the materiality of
12   their breach, we didn't have to give
13   any notice or any -- we were excused
14   from any further performance on our
15   part.
16        MR. KARLAN:  Mr. Chairman, what
17   is the Panel's wish about timing?
18        CHAIRPERSON SCHIMMEL:  Well, we
19   gave you a fair amount of
20   flexibility.
21        MR. KARLAN:  Yeah, I know, I
22   just -- I'm just --
23        CHAIRPERSON SCHIMMEL:  I want
24   to give Mr. Fleischman some
25   flexibility.  We'll take a break and

25 (Pages 1164 - 1167)

# EXHIBIT X

# DOCUMENT WITHHELD PENDING REQUEST TO FILE UNDER SEAL