UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AL MAYA TRADING ESTABLISHMENT,

Petitioner,

v.

GLOBAL EXPORT MARKETING CO., LTD.,

Respondent.

Case No. 16-cv-2140

---

**PETITIONER'S COMBINED MEMORANDUM OF LAW
IN OPPOSITION TO RESPONDENT'S
CROSS-PETITION TO VACATE AN ARBITRAL AWARD AND
IN FURTHER SUPPORT OF ITS PETITION FOR AN ORDER
CONFIRMING THE AWARD AND DIRECTING ENTRY OF
JUDGMENT THEREON**

**[CORRECTED]**

Mitchell A. Karlan
  mkarlan@gibsondunn.com
Akiva Shapiro
  ashapiro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Petitioner*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

COUNTER-STATEMENT OF THE FACTS ...................................................... 3

    I.      In 2013, Gemco Asserts That the Parties' Written Agency Agreement Never Existed And Refuses To Arbitrate Al Maya's Claims. ........................... 3

    II.    In 2014, The Parties Litigate Gemco's False Forgery Allegations In Federal Court, With Gemco Eventually Stipulating To The Authenticity Of The Agency Agreement And To Arbitration Before The AAA. ................................................. 5

    III.   The 2015-2016 Arbitration: Discovery, Hearing, And Award .............................. 6

          A.     The Parties Engage In Extensive Document Discovery, And The Panel Rules Against Gemco On A Single Document Request. ................................................................................... 6

          B.     The Parties Take Depositions And Exchange Expert Reports .................. 10

          C.     The Panel Hears Witness Testimony Over Four Days, Holds Closing Argument, And Issues A Reasoned Award. ................................ 11

LEGAL STANDARDS .................................................................................... 13

ARGUMENT ................................................................................................... 14

    I.      Gemco's Petition To Vacate The Award Should Be Denied. ............................... 14

          A.     The Arbitrators' Exercise Of Their Wide Discretion To Deny Gemco A Single Document Request Cannot Qualify As "Refus[al] To Hear Evidence" Justifying Vacatur, Particularly Where The Parties Explicitly Agreed To Limited Discovery In Arbitration. ................................................................................. 14

          B.     Gemco's Concession That It Received All Of The Information It Requested In "Summary" Format, And Pursued Additional Documents Only To "Verify" The Information In The Summary, Dooms Its Motion. .................................................... 17

          C.     The Arbitrators Had Multiple Reasonable Bases For Denying Gemco's Request For "Line-By-Line" Back-Up Data— Namely, That It Was Untimely, Unduly Burdensome, And Cumulative. .............................................................................. 19

          D.     The Award Cannot Be Vacated Because The Panel's Discovery Ruling Did Not Prejudice, And In Fact Benefitted, Gemco. .................... 23

## TABLE OF CONTENTS
(continued)

**Page**

II.    Al Maya's Petition To Confirm The Award Should Be Granted. ........................ 25

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abu Dhabi Inv. Auth. v. Citigroup, Inc.*,
  No. 12 Civ. 283, 2013 WL 789642 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 557 F.
  App'x 66 (2d Cir. 2014)............................................................................15, 16, 17, 25

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.*,
  344 F.3d 255 (2d Cir. 2003)...................................................................................19

*Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, United Auto.,
  Aerospace & Agr. Implement Workers of Am.*,
  500 F.2d 921 (2d Cir. 1974)...................................................................................14

*Bisnoff v. King*,
  154 F. Supp. 2d 630 (S.D.N.Y. 2001).................................................................22, 24

*Chevron Transportation Corp. v. Astro Vencedor Compania Naviera, S.A.*,
  300 F. Supp. 179 (S.D.N.Y. 1969).....................................................................22, 24

*Commercial Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford*,
  526 F. Supp. 2d 424 (S.D.N.Y. 2007).....................................................................16

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
  333 F.3d 383 (2d Cir. 2003)...................................................................................13

*Fairchild Corp. v. Alcoa, Inc.*,
  510 F. Supp. 2d 280 (S.D.N.Y. 2007).................................................................14, 18

*Fine v. Bear, Stearns & Co.*,
  765 F. Supp. 824 (S.D.N.Y. 1991).....................................................................13, 15

*Finkelstein v. UBS Glob. Asset Mgmt.*,
  No. 11 CV 00356, 2011 WL 3586437 (S.D.N.Y. Aug. 9, 2011) ........................1, 23

*Home Indemnity v. Affiliated Food Distributions, Inc.*, No. 96-CV-9707,
  1997 WL 773712 (S.D.N.Y. Dec. 12, 1997) ...........................................................23

*Hunt v. Mobil Oil Corp.*,
  654 F. Supp. 1487 (S.D.N.Y. 1987).........................................................................14

*Inficon, Inc. v. Verionix, Inc.*,
  No. 15 Civ. 8044, 2016 WL 1611379 (S.D.N.Y. Apr. 19, 2016)...............14, 23, 24

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
  729 F.3d 99 (2d Cir. 2013)......................................................................................14

# TABLE OF CONTENTS
### (continued)

**Page**

*Krantz & Berman, LLP v. Dalal*,
No. 09 Civ. 9339, 2011 WL 1810490 (S.D.N.Y. May 12, 2011), *aff'd*, 472 F.
App'x 76 (2d Cir. 2012)..................................................................................................22

*Kruse v. Sands Bros. & Co.*,
226 F. Supp. 2d 484 (S.D.N.Y. 2002).............................................................................1

*Landmark Ventures, Inc. v. InSightec, Ltd.*,
619 F. App'x 37 (2d Cir. 2015) ...........................................................................13, 14, 16

*Mandell v. Reeve*,
No. 10 Civ. 6530, 2011 WL 4585248 (S.D.N.Y. Oct. 4, 2011), *aff'd*, 510 F.
App'x 73 (2d Cir. 2013).............................................................................................22, 24

*Matthew v. Papua New Guinea*,
No. 09 Civ. 3851, 2009 WL 4788155 (S.D.N.Y. Dec. 9, 2009), *aff'd*, 398 F.
App'x 646 (2d Cir. 2010) ...............................................................................................16

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
473 U.S. 614 (1985).................................................................................................15, 21

*Mobius Mgmt. Sys., Inc. v. Technologic Software Concepts, Inc.*,
No. 02 Civ. 2820, 2002 WL 31106409 (S.D.N.Y. Sept. 20, 2002).........................................11

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*,
No. 15-2801, 2016 WL 1619883 (2d Cir. Apr. 25, 2016) ...........................................14, 16, 23

*Ottawa Office Integration Inc. v. FTF Bus. Sys., Inc.*,
132 F. Supp. 2d 215 (S.D.N.Y. 2001).......................................................................19, 22

*Postlewaite v. McGraw-Hill, Inc.*,
No. 98 Civ. 0611, 1998 WL 751687 (S.D.N.Y. Oct. 28, 1998), *aff'd sub nom.*,
10 F. App'x 16 (2d Cir. 2001) .........................................................................................24

*Roche v. Local 32B–32J Service Employees Int'l Union*,
755 F. Supp. 622 (S.D.N.Y. 1991)..................................................................................1

*Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*,
668 F.3d 60 (2d Cir. 2012)...........................................................................................25

*Stifel, Nicolaus & Co. v. Forster*,
No. 14 CIV. 6523, 2015 WL 509684 (S.D.N.Y. Feb. 6, 2015)...................................3, 14, 17

*Tempo Shain Corp. v. Bertek, Inc.*,
120 F.3d 16 (2d Cir. 1997).............................................................................................22

# TABLE OF CONTENTS
### (continued)

**Page**

*Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Co-op.,*
  *Pension & Welfare Funds v. Thalle/Transit Const. Joint Venture,*
  No. 12-CV-5661, 2014 WL 3529728 (E.D.N.Y. July 15, 2014)............................................11

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,*
  484 U.S. 29 (1987)................................................................................................15, 18

*Wallace v. Buttar,*
  378 F.3d 182 (2d Cir. 2004).................................................................................13, 19

*Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.,*
  103 F.3d 9 (2d Cir. 1997) ...........................................................................................13

**Statutes**

9 U.S.C. § 6.................................................................................................................1

9 U.S.C. § 10(a)(3).................................................................................................13, 23

**Rules**

Commercial Arbitration Rule 22 ...................................................................................16

Commercial Arbitration Rule 23 ...................................................................................16

# INTRODUCTION

It has been almost three years since Respondent Global Export Marketing, Co. ("Gemco") breached the parties' written contract (the "Agency Agreement") and began its campaign to evade both arbitration and liability.  Its "cross-petition to vacate"[1] the well-reasoned arbitration award in Al Maya's favor is as meritless and vexatious as Gemco's previous efforts.

Despite there being an arbitration clause in the Agency Agreement, in 2013 Gemco refused to arbitrate, forcing Al Maya to file a petition to compel arbitration in this Court.  Gemco opposed that petition on frivolous (and defamatory) grounds, asserting that Al Maya had forged the Agency Agreement.  Al Maya had no choice but to debunk Gemco's shifting theories of how it could have accomplished this alleged forgery, one after the next, and spend almost a year preparing for a jury trial regarding the Agency Agreement's authenticity.  After Al Maya disproved Gemco's forgery theories and left Gemco facing, in Judge Paul A. Engelmayer's words, an "uphill battle at trial," it proceeded to make additional meritless legal arguments as to why the parties should not arbitrate.  Judge Engelmayer rejected them all.  Days before trial was scheduled to begin, Gemco finally capitulated, agreeing to the authenticity of the Agency Agreement and arbitration of Al Maya's claims before the AAA.

Once arbitration finally began, the parties exchanged voluminous written discovery, took numerous depositions, exchanged expert reports, filed over 200 pages of pre- and post-hearing briefs covering every conceivable legal and factual issue, submitted written witness statements,

---

[1] Under 9 U.S.C. § 6, "[a] request for vacatur must be made in the form of a motion."  *Kruse v. Sands Bros. & Co.*, 226 F. Supp. 2d 484, 485-86 (S.D.N.Y. 2002); *see also Finkelstein v. UBS Glob. Asset Mgmt.*, No. 11 CV 00356, 2011 WL 3586437, at *4 (S.D.N.Y. Aug. 9, 2011) (stating that it was "procedural[ly] defective" for party to file "petition" to vacate instead of a "motion").  As multiple courts in this district have recognized, forcing a prevailing party in arbitration to respond to a "petition" to vacate would unfairly place the "burden" on the prevailing party to show that the other side "could not prove any facts that would entitle them to relief from the Award."  *Kruse*, 226 F. Supp. 2d at 487; *see also Roche v. Local 32B–32J Service Employees Int'l Union*, 755 F. Supp. 622, 624 (S.D.N.Y. 1991) (party moving to vacate arbitration award bears burden of proof).  Accordingly, Al Maya responds to Gemco's "cross-petition" with an opposition brief, rather than an answer.

deposition designations, and over 500 exhibits, and held a four-day hearing with opening and

closing statements and the examination and cross-examination of numerous witnesses.  Not

satisfied with the millions of fields of sales, cost, profit, and other data going back a decade, and

the thousands of pages of listing and rebate agreements and other documents, Gemco pushed for

more and more discovery, in contravention of the AAA rules and the parties' explicit agreement

that document exchanges would be "focused."   And it continued to intimate that the Agency

Agreement was inauthentic and raised numerous arguments for non-liability that were uniformly

rejected by the arbitration Panel.  In the end, the Panel awarded Al Maya $4,254,000 in lost

profits (a figure it took from *Gemco's* expert report) as well as $1.1 million in attorneys' fees and

costs that Al Maya incurred to compel Gemco to arbitrate in federal court and for Gemco's other

wasteful, cost-increasing litigation tactics.

      Now, in response to losing in arbitration and to Al Maya's Petition to Confirm the

Award, Gemco seeks to turn a single adverse discovery ruling in arbitration into an issue of

arbitrator "misconduct" and denial of "fundamental fairness" justifying the extraordinary remedy

of vacatur of the well-reasoned, 22-page Final Award written by the three-member arbitration

Panel following extensive discovery, briefing, and hearings—despite the fact that it never so

much as suggested during the arbitration that it was denied a fair hearing or the opportunity to

present its case.  It does so by distorting the arbitration record and ignoring a tsunami of case law

that makes clear that the denial of a document request—particularly given the wide discretion the

parties gave to the arbitrators with respect to discovery—simply does not, as a matter of law, fall

within the narrow grounds set out in the FAA for vacatur based on an arbitrator's "refus[al]" to

hear evidence, which courts have made clear applies "only if a party's right to be heard has been

'grossly and totally blocked.'" *Stifel, Nicolaus & Co. v. Forster*, No. 14 CIV. 6523, 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015) (citation omitted).

Moreover, even if the denial of a single document request could in some extreme circumstance serve as grounds for vacatur, Gemco's arguments for vacatur would be entirely meritless on the facts presented here on multiple independent grounds.  These include that Gemco was denied only "underlying documents" that it concedes it sought only to "verify" financial information Al Maya produced in summary format; that the arbitrators had, at the very least, a colorable justification for denying Gemco's request as it was untimely, unduly burdensome, and cumulative; and that Gemco was not prejudiced in any way—and in fact, ironically, benefited from the Panel's decision on that single discovery request.

## COUNTER-STATEMENT OF THE FACTS[2]

I.  **In 2013, Gemco Asserts That the Parties' Written Agency Agreement Never Existed And Refuses To Arbitrate Al Maya's Claims.**

The parties' litigation began when Gemco unilaterally terminated the parties' written agreement and refused to arbitrate under its arbitration clause.  For roughly 25 years, Al Maya served as the exclusive distributor of Gemco's products, including its foodstuffs under Gemco's "American Garden" label, in the United Arab Emirates.  *See* Ex. A (Arbitration Award) ¶¶ 1-2, 14.[3]  Initially, Al Maya acquired exclusive rights pursuant to an oral agreement with Gemco, *id*. ¶ 14, but on June 16, 1999, the parties formalized their relationship as to the "American Garden"

---

[2]  What follows is a more detailed recitation of the facts than Al Maya included in its March 23, 2016 Petition for an Order Confirming an Arbitral Award and Directing Entry of Judgment Thereon, responding to the factual assertions and arguments made in Gemco's "Cross-Petition to Vacate Final Arbitration Award."

[3]  Exhibits marked Ex. A through Ex. F are referenced in the Declaration of Mitchell A. Karlan dated March 23, 2016 and filed with Al Maya's Petition for an Order Confirming an Arbitral Award and Directing Entry of Judgment Thereon.  Exhibits marked Ex. G are referenced in the Declaration of Akiva Shapiro dated May 16, 2016 and filed herewith.  Exhibits filed with the Declaration of Saleem Mawji dated April 29, 2016 ("Mawji Declaration") are labeled "Gemco Ex. __."  Gemco has requested that some of the exhibits filed with the Mawji Declaration be filed under seal.  Al Maya intends to oppose Gemco's sealing request in a separate letter opposition.

label in writing in an "Agency Agreement." *See* Ex. C (Agency Agreement).  The Agency

Agreement provided for automatically renewing two-year terms (1999-2001, 2001-2003, *etc.*).

*Id*.  The Agency Agreement contained an arbitration clause stating that "[a]ll disputes and or

differences that may arise between the parties hereto out of or in relation to or in connection with

this agreement or for any breach thereof shall be settled through arbitration."  *Id*. ¶ 9.

> While the Agency Agreement was in effect, Al Maya promoted and distributed American

Garden brand goods with great success, turning it into one of the leading brands in the region.

Despite the parties' fruitful partnership, by 2013, Gemco had decided to terminate Al Maya.

Ex. A ¶ 26.  In September 2013—during the 2013-2015 term of the Agency Agreement—

Gemco entered into formal agreements with two other distributors.  *See* Ex. G.  The same day

that it reached an agreement with the second of the two, Gemco verbally informed Al Maya that

it was terminating Al Maya, effective immediately.  *See id*.; Ex. A ¶ 28.

> About two weeks later, Al Maya wrote to Gemco that it considered Gemco's termination

a violation of the Agency Agreement.  Ex. A ¶ 31.  To Al Maya's astonishment, Gemco

responded in part that it "did not sign any valid exclusive distributorship with your company."

*Id*. ¶ 32.  Al Maya sent a second breach letter, and Gemco responded by asserting that the 1999

Agency Agreement "never existed" and was "never signed" by Gemco.  Ex. H.

> Since Gemco refused to recognize that the Agency Agreement "existed," *id*., Al Maya

filed a demand for arbitration pursuant to Section 4 of the FAA.  Ex. I.  Gemco did not respond

to the demand, and on January 14, 2014, Al Maya filed a Petition for an Order Directing

Arbitration in the United States District Court for the Southern District of New York.  *See* Ex. A

¶ 33 ("Gemco refused to arbitrate the dispute"); Ex. D (Petition For An Order Directing

Arbitration).  The case (No. 1:14-cv-00275-PAE) was assigned to Judge Paul A. Engelmayer.

**II.     In 2014, The Parties Litigate Gemco's False Forgery Allegations In Federal Court, With Gemco Eventually Stipulating To The Authenticity Of The Agency Agreement And To Arbitration Before The AAA.**

On February 25, 2014, Gemco moved to dismiss Al Maya's petition on the grounds that "[t]he 1999 Agreement is fabricated and there is no written agreement between [Gemco] and Al Maya."  Case No. 1:14-cv-00275-PAE, Dkt. 24 (Motion to Dismiss).  Gemco submitted to the Court a declaration from its president, Kevin Egan, in which he swore under penalty of perjury that he "never signed the 1999 Agreement" and "never saw [it] until I received Al Maya's motion papers."  Case No. 1:14-cv-00275-PAE, Dkt. 8-2.  Egan further swore that "[t]he 1999 agreement is a complete fabrication" and that "what appears to be my signature on the 1999 Agreement, is not my signature."  *Id*.  Based primarily on Egan's testimony, Judge Engelmayer found that Gemco raised "a genuine issue of disputed fact as to the authenticity of the Agreement" and ordered a jury trial to determine the issue of the Agreement's authenticity.  *See* Case No. 1:14-cv-00275-PAE, Dkt. 36 (March 19 Order).  He also warned Gemco that Mr. Egan would have "a much larger issue than the outcome whether there's an arbitration agreement, if he is lying on the point."  Case No. 1:14-cv-00275-PAE, Dkt. 44 at 7:7-9 (April 16 Hearing Tr.).

Al Maya spent the next five months fighting the many iterations of Gemco's false forgery allegation.  Even after failing in its efforts to muster evidence that the Agency Agreement was a forgery, Gemco *still* refused to arbitrate Al Maya's claims.  As Judge Engelmayer noted, Gemco "began to contemplate other legal challenges to the Agreement after the discovery process led it to conclude that it faced an uphill battle in establishing forgery at trial."  Case No. 1:14-cv-00275-PAE, Dkt. 67 (July 15 Order).  On August 25, 2014, days before the jury trial was scheduled to begin, Gemco finally relented.  It stipulated to "[t]he authenticity, validity, and enforceability of the 1999 Agency Agreement" and agreed that the AAA would administer the arbitration pursuant to its Rules for Commercial Arbitration.  Ex. B ¶¶ 1, 4.  Likely

5

recognizing that Egan could be prosecuted for perjury and that Al Maya would seek sanctions for Gemco's frivolous challenge to arbitration, Gemco also acceded to Al Maya's demand that the arbitrators have "discretion in awarding costs in the arbitration to award any costs and attorneys' fees associated with [the authenticity] proceeding." *Id*. ¶ 5. On August 27, 2014, Judge Engelmayer "SO ORDERED" the Stipulation, Ex. B, and closed the case. Case No. 1:14-cv-00275-PAE, Dkt. Nos. 96, 97.

On September 4, 2014, Al Maya filed its Demand for Arbitration with the American Arbitration Association. Ex. E. If not for Gemco's false forgery claim and other tactics, Al Maya would have done so nearly a year earlier.

## III. The 2015-2016 Arbitration: Discovery, Hearing, And Award

### A. The Parties Engage In Extensive Document Discovery, And The Panel Rules Against Gemco On A Single Document Request.

In April 2015, the AAA/ICDR named a Panel of three arbitrators, comprising Daniel Schimmel, Chairperson of the Panel and partner in the law firm Foley Hoag LLP (formerly a partner in the law firm Kelley Drye & Warren LLP); Grant Hanessian, Member of the Panel and partner in the law firm Baker & McKenzie LLP; and Robert G. Cohen, Member of the Panel and partner in the law firm Orrick, Herrington & Sutcliffe LLP. *See* Ex. J (AAA letters appointing Panel members). A few weeks later, the Panel held a preliminary telephonic hearing, at which the parties confirmed "that the Commercial Arbitration Rules of AAA/ICDR, and New York substantive and procedural law" would be applied in the arbitration proceedings. Ex. A ¶ 5.

Following the hearing, the Panel issued a Procedural Order setting a schedule for the arbitration proceedings. That Procedural Order (Ex. K), stated that the "[p]arties have indicated that they wish to reach a speedy and efficient resolution of their dispute," and that "The Panel and both sides agree that there needs to be *focused disclosure* of documents, consistent with Rule

22 of the Commercial Arbitration Rules of AAA" (emphasis added).  The Procedural Order also provided that each side would have the opportunity to depose fact witnesses, submit sworn witness statements of two witnesses (who would also testify live at the hearing), and retain experts.  *Id*.  The parties submitted suggested schedules and related procedural guidelines to the Panel, which ultimately ordered four fact witness depositions per side and that all ongoing discovery disputes be brought to the Panel's attention by June 5.  Ex. L (Scheduling Order).

Despite the Panel's directive that discovery was to be "focused," between April and May, Gemco served on Al Maya five sets of voluminous document requests, totaling over 140 separately numbered parts and sub-parts, a significant portion of which focused on granular sales, cost, and profit data stretching back over a decade, and in some cases nearly 20 years. Exs. M-Q (Gemco's First Through Fifth Requests for the Production of Documents).  While making specific objections to Gemco's requests, Al Maya produced vast quantities of responsive data and documents.  After serving its five formal document requests, Gemco supplemented its requests by e-mail and letter to the Panel.

The dispute on which Gemco relies in its cross-petition to vacate began on June 1, 2015, when Gemco told Al Maya that it "require[d] the complete Profit and Loss Statements for the entity (or entities) that sold AG for the years 2003 through Sept 2013 ytd and for any related entity where expenses relating to the sales, marketing and distribution of [American Garden] may appear."  Gemco Ex. E.  Two weeks later, on June 15, Gemco asked the Panel to order Al Maya to produce "the profit and loss statement" for American Garden.  Gemco Ex. F.

After a further exchange of letters, the Panel issued a ruling on outstanding discovery disputes, ordering Al Maya to produce "profit and loss statements for the entities that sold American Garden brand[] products" from 2010 through 2013, and "documents reflecting []

expenses or costs" relating to sales of American Garden goods.  Gemco Ex. I.[4]  The Panel added

in its ruling:

> To the extent the parties' experts believe that they do not have the data they need,
> the parties can write to the Panel by July 1, describe with specificity why the
> current information is not sufficient, and request a ruling on the production of
> focused additional documents.  The Panel reiterates that this is an arbitration
> under the Commercial Arbitration Rules, not a domestic litigation.

*Id*.  On June 30, Al Maya produced the requested profit and loss statements (the "P&Ls," or what

Gemco refers to as the "Four Page Summary") not only for the years 2010 through 2013, as the

Panel had instructed, but for the entire period from 2004 through year-to-date 2015, as well as

additional cost and expense data.  Shapiro Decl. ¶ 14 & Ex. R.  It is undisputed that the P&Ls

were generated from Al Maya's financial accounting system.  Gemco Ex. V (Day 3 Tr.) at Tr.

763:2-8, 782:3-8.

On July 1, 2015—the deadline for informing the Panel of any outstanding discovery

disputes—Gemco sent another letter to the Panel in which it acknowledged that Al Maya had in

fact produced the "profit and loss statements" it had sought ("Al Maya 3392-3395"), but asserted

that it "had no ability to verify the accuracy and completeness of the allocations."  Gemco Ex. K.

Gemco stated that it "require[s] line-by-line detail for items of expense[s] included" in some of

the categories appearing in the document.  On July 6, 2015, Al Maya submitted a lengthy

response arguing that Gemco's new "line-by-line detail" request was untimely, cumulative, and

unduly burdensome.  *See* Gemco Ex. L.

By that point, Gemco's requests had been so expansive, and Al Maya's productions so

voluminous, that Al Maya wrote to the Panel:

> To date, Al Maya has produced over 800 megabytes of raw sales, cost, and profit
> data in dozens of Excel spreadsheets, including individual lot number, quantity,

---

[4]   The Panel also ruled on a variety of other discovery disputes not relevant to the instant proceedings.

> cost to Al Maya, unit cost, sale value, unit sales price, profit, and profit margin
> data for every American Garden lot purchased by Al Maya from Gemco from
> 2004 through the September 2013 termination.   Al Maya has also produced
> individual invoice number, invoice amount, cost value, and profit margin data for
> every invoice of non-American Garden products supplied by Gemco to Al Maya.
> It has produced raw data on product it was unable to sell or was forced to sell
> below cost after termination, and on requests for product that Gemco did not
> fulfill prior to termination, in violation of the parties' contract.   And Al Maya has
> produced copies of every rebate, display, and listing fees agreement it entered into
> for American Garden and other products supplied by Gemco from 2004 to
> termination, along with voluminous additional data.   Some of the spreadsheets
> produced by Al Maya have more than 500,000 rows of raw transaction data—and
> more than 20 columns of information about each lot—or more than 10 million
> data points in a single spreadsheet.

Gemco Ex. L at n. 1.  In short, Al Maya had produced copious data to Gemco, much of which

corroborated the P&Ls.  Al Maya also objected to Gemco's new requests because they were

untimely ("Al Maya respectfully requests that Gemco not be permitted to supplement its

document requests at this late date"), unduly burdensome (pointing out that Gemco had itself

refused to produce "the very expense details it now seeks from Al Maya" on the basis that "it

would be overly burdensome" for Gemco to do so),[5] and "duplicative of other information that

Al Maya has already produced."  *Id*. at 3 & n.2.

In a July 7 e-mail response, Gemco acknowledged that in producing the P&Ls Al Maya

had "complied with the Panel's order."  Gemco Ex. M.  Gemco's attorney nevertheless asserted

that Gemco "needs the underlying information . . . to verify the accuracy and completeness of the

allocations" made in the P&Ls.  It furthered conceded that these requests for underlying

documentation were "new," though it argued that they were new "only in the sense that [Gemco]

---

[5] Gemco's assertion in its papers that the voluminous documents underlying the P&L statements were readily
"available" to Al Maya, Gemco Br. 18, is entirely unsupported by the record and is inaccurate.  In fact, unlike
the P&L statements, which were generated from Al Maya's financial accounting system, the task of collecting,
organizing, and producing what would likely have been millions of supporting documents would have been
incredibly time-consuming, costly, and burdensome.

needs the documents [on] which [Al Maya] relied" in generating the profit-and-loss statements.
*Id*.

Having "reviewed the parties' submissions," the Panel "rule[d]" on July 8.  Gemco
Ex. N.  It addressed four disputes not relating to Gemco's request for "underlying financial
documents" in detail, and ruled that "[a]ny other disputed requests not addressed above are
deemed denied."  *Id*.  The Panel's denial of Gemco's request for the additional "underlying
financial documents" it sought in connection with the P&Ls is the sole purported basis for
Gemco's Petition to Vacate.  *See* Gemco Br. 16.

### B.       The Parties Take Depositions And Exchange Expert Reports.

Each side deposed four fact witnesses and the other's expert.  Although Al Maya deposed
Gemco's finance director, Gemco did not seek to depose Al Maya's CFO or any other employee
in the finance department, and instead chose to use its four fact witness depositions on other Al
Maya employees.  Al Maya also arranged for an Al Maya accounts manager, Sangram Gandhi,
to provide a sworn declaration regarding the creation of the P&Ls, in which he "attest[ed] to the
accuracy of the information contained in" the statements and explained some of the categories of
figures.  Gemco Ex. P.[6]  Gemco did not ask the Panel for permission to depose Sangram Gandhi
after it received his declaration, nor did it seek to call him to testify at the hearing.

The parties also exchanged expert reports.  Al Maya's expert, Carlyn Irwin, concluded
that Al Maya was due approximately $8,256,000 in lost profits for American Garden, and
$2,083,000 in lost profits for brands that Al Maya distributed for Gemco other than American
Garden, in part using the data in the P&Ls.  *See* Gemco Ex. O at 19.  Gemco's damages expert,

---

[6]   In light of the Gandhi declaration, Gemco's assertion in its papers that information regarding the preparation of
the P&L statements and "the methodologies used to prepare" them "remain unknown to this day," Gemco Br.
17, is inaccurate.  As Gemco's expert testified at the hearing, "I'm not questioning that these numbers came out
of [Al Maya's] financial system."  Gemco Ex. V (Day 3 Tr.) at 782:3-8.

Maureen Loftus (who supplied an improper declaration in support of Gemco's Petition to

Vacate, *see* Dkt. 20[7]) found that Gemco was due only $4,109,000 in lost profits for American

Garden.  *See* Ex. A ¶ 69.  Loftus's findings were based in part on her "adjust[ing]" the profit

margin in the 2012 P&L downward "to account for estimated additional incremental costs not

reflected" in the P&Ls, Gemco Ex. R at 21, and in reliance on "other documentary evidence" in

the record, including "internal [Al Maya] emails" regarding costs and profit margin, Gemco Br.

12, 18.

          After the close of discovery, the parties submitted to the Panel written witness statements,

deposition designations, expert reports, opening and rebuttal briefs arguing various legal and

factual points, and over 500 exhibits.  Ex. A ¶ 8.

          **C.      The Panel Hears Witness Testimony Over Four Days, Holds Closing**
                   **Argument, And Issues A Reasoned Award.**

          For four days in September 2015, the Panel heard live testimony from six witnesses—

four fact witnesses and the two damages experts—in accordance with the parties' agreed-upon

procedure.  Ex. A ¶ 8.  All of the witnesses were cross-examined and asked questions of by the

Panel, and the parties questioned the witnesses about many of the exhibits submitted in the case.

---

[7]  The Court should evaluate Gemco's motion for vacatur on the record before the arbitrators and strike the new
declaration supplied by its expert, Maureen Loftus.  *See, e.g.*, *Mobius Mgmt. Sys., Inc. v. Technologic Software
Concepts, Inc.*, No. 02 Civ. 2820, 2002 WL 31106409, at *4 (S.D.N.Y. Sept. 20, 2002) ("The Federal
Arbitration Act [] does not allow the district court to vacate an award on the basis of new evidence."); *Trs. of
Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Co-op., Pension & Welfare Funds v.
Thalle/Transit Const. Joint Venture*, No. 12-CV-5661, 2014 WL 3529728, at *5 (E.D.N.Y. July 15, 2014)
(rejecting new evidence introduced by party seeking to vacate award).  In any case, Loftus's declaration—
which focuses on communications between her and Gemco's counsel—adds nothing relevant to Gemco's legal
argument.  What matters in evaluating Gemco's motion to vacate is the record proceedings in front of the
arbitrators, not internal communications between one side's expert and counsel, or an expert's internal
deliberations.  To the extent the Court looks to the declaration at all, the critical points are Gemco's expert's
concession that she wanted additional underlying documentation only  to "verify the accuracy and
completeness" of the P&Ls Gemco already received, and her admission that Al Maya "produced numerous
excel spreadsheets, some of which contained more than 500,000 lines," which "allowed [her] to verify [Al
Maya's] historical sales revenue and costs of goods sold as to American Garden and GEMCO's other brands
appearing in the Food Distribution Division Income Statement."  Dkt. 20 ¶¶ 13-14.

At the hearing, Carlyn Irwin, Al Maya's expert, testified that she had been able to reconcile the figures in the P&Ls with the backup data Al Maya had produced.  *See* Gemco Ex. V (Day 3 Tr.) at 654:13-656:3; *see also id.* at 655:23-656:3 ("I was able to tie all of [the data] out which gave me – and going through that forensic review exercise gave me a great deal of comfort in the reliability in this information.").  Gemco's expert, Loftus, also testified that she was able to verify numerous figures in the P&Ls using underlying data that Al Maya had produced.  In particular, Loftus testified:

> I did the same [as Irwin], and I think it does give me comfort, if that's the word, assurance that for the information that **I could verify, it – I did verify it. And we did the same thing; we verified sales, we verified the cost of goods sold, I believe it was called landed cost of goods sold**. And these spreadsheets are huge, there's a lot of data. I looked at the same data.  I have no dispute.  There's a -- there were files by year for all of the rebates by product, by customer, by SKU. I did that analysis, too. And the numbers in the spreadsheets matched -- excuse me, **the underlying data matched the numbers** in [the P&Ls], yeah.

Ex. V (Day 3 Tr.) at 791:19-792:20 (emphases added).  Nevertheless, Loftus continued to maintain that her two percent reduction in the profit margin was appropriate because there were some figures in the P&Ls she could not verify using backup data she reviewed.  *Id.* at 794:2-3.

After the hearing, the Panel gave the parties the opportunity to submit written responses to a number of legal and factual questions posed by the Panel, Ex. A ¶ 9, and in January 2016, the Panel held closing arguments.  *Id.*  On March 4, 2016, the Panel issued its 22-page, single-spaced decision (the Final Award) awarding Al Maya $5,733,023.52 for certain categories of damages, prejudgment interest, and legal fees and costs.  *See* Ex. A at 22.  In addition, the Panel awarded Al Maya $74,000 in lost profits "attributable to unfulfilled orders of AG products," citing Gemco's expert's report.  *Id.* ¶ 73.[8]  The Panel detailed the history of the parties'

---

[8]  The summary on page 22 of the Final Award leaves out this category of damages, but they were clearly awarded by the Panel, *see* Ex. A ¶ 73, and should be included in the confirmation of the award and judgment.

relationship and other relevant facts, and made legal findings on various issues litigated by the parties during the pre-trial proceedings.  *See* Ex. A ¶¶ 1-60.

In its damages analysis, the Panel assessed each category of damages claimed by Al Maya in turn, including lost profits, outstanding debit notes, various other expenses, prejudgment interest, and litigation costs.  *Id*. ¶¶ 61-91.  The Panel found that Al Maya was due lost profits but adopted Gemco's expert's damages calculation as "more reliable" than Al Maya's expert's. *Id*. ¶ 63.  The Panel's award to Al Maya of $4,254,000 in economic damages adopted Loftus's two-percent reduction to the profit margin.  *See id*. ¶¶ 63-69.

## LEGAL STANDARDS

"Judicial review of arbitration awards is 'very limited,'" *Landmark Ventures, Inc. v. InSightec, Ltd.*, 619 F. App'x 37, 38 (2d Cir. 2015) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)), because "an overly expansive judicial review of arbitration awards would undermine the litigation efficiencies which arbitration seeks to achieve," *Fine v. Bear, Stearns & Co.*, 765 F. Supp. 824, 827 (S.D.N.Y. 1991).  Accordingly, "[a] party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law," *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003), "all of [which] involve corruption, fraud, or some other impropriety on the part of the arbitrators," *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004).

In its cross-petition, Gemco relies only on 9 U.S.C. § 10(a)(3), which permits vacatur of an arbitral award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  Gemco presents this statute as if it permitted vacatur whenever a party—such as Gemco here—has been denied a single document request.  But courts have routinely and resoundingly rejected this overbroad reading of the

13

statute, making clear that "only the most egregious errors or instances of extreme misconduct cited in the statute that would materially prejudice the rights of a party warrant vacating an arbitral award." *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 286-87 (S.D.N.Y. 2007). Further, even an arbitrator's "erroneous refusal to hear 'pertinent and material' evidence will only provide a basis for vacatur if the decision deprives a party of a fundamentally fair arbitration process," *i.e.*, "only if a party's right to be heard has been 'grossly and totally blocked.'" *Stifel, Nicolaus & Co. v. Forster*, 2015 WL 509684, at *5; *Inficon, Inc. v. Verionix, Inc.*, No. 15 Civ. 8044, 2016 WL 1611379, at *6 (S.D.N.Y. Apr. 19, 2016) (same).[9]

## ARGUMENT

**I.      Gemco's Petition To Vacate The Award Should Be Denied.**

**A.      The Arbitrators' Exercise Of Their Wide Discretion To Deny Gemco A Single Document Request Cannot Qualify As "Refus[al] To Hear Evidence" Justifying Vacatur, Particularly Where The Parties Explicitly Agreed To Limited Discovery In Arbitration.**

As the Second Circuit made clear only weeks ago, "[i]t is well settled that procedural questions that arise during arbitration, *such as which witnesses to hear and which evidence to receive or exclude*, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, No. 15-2801, 2016 WL 1619883, at *14-16 (2d Cir. Apr. 25, 2016) (emphasis added); *see also, e.g.*, *Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 500 F.2d 921, 923 (2d Cir. 1974) ("In handling evidence an arbitrator need not follow all the niceties observed by the federal courts.  He need

---

[9]  *See also, e.g., Landmark Ventures*, 619 F. App'x at 39 ("Arbitrators enjoy significant deference in their evidentiary rulings; a decision not to hear evidence rises to the level of misconduct only when it denies a party 'fundamental fairness.'") (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104, 107 (2d Cir. 2013)); *Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487, 1512 (S.D.N.Y. 1987) ("Only the most egregious error which resulted in adversely affecting the rights of a party would justify application of [§ 10(a)(3)] and require vacatur of an award.").

only grant the parties a fundamentally fair hearing.").  The Supreme Court has thus admonished

that, "when the subject matter of a dispute is arbitrable," as it indisputably is here, "'procedural'

questions which grow out of the dispute and bear on its final disposition are to be left to the

arbitrator." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987).

Such procedural questions are left to the arbitrators because "[b]y agreeing to arbitrate ...,

[a party] trades the procedures and opportunity for review of the courtroom for the simplicity,

informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-

Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  Yet Gemco seeks to have it both ways here.  Having

agreed to—and benefitted from—the informality and expeditiousness of arbitration, it now seeks

to overturn a final arbitration award on the basis of the arbitrators' discretionary denial of a

single discovery request.  Putting aside the fact that the request was untimely, unduly

burdensome, and cumulative, this is simply not the kind of ruling that is properly the subject of a

motion to vacate an arbitration award.  *See, e.g.*, *Fine*, 765 F. Supp. at 828-29 (S.D.N.Y. 1991)

(rejecting "petitioner's conten[tion] that the arbitrators were guilty of misconduct in refusing to

hear evidence pertinent and material to the controversy" because "the arbitrator is the judge of

the admissibility and relevancy of evidence [] in an arbitration") (citation and quotation marks

omitted).  As Judge Daniels noted in a decision rejecting an argument very much like Gemco's,

the party seeking vacatur "cite[d] no federal case—and this Court could find none—where a

court vacated an arbitral award because the panel denied one party a document request." *Abu

Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12 Civ. 283, 2013 WL 789642, at *9 (S.D.N.Y. Mar. 4,

2013), *aff'd*, 557 F. App'x 66 (2d Cir. 2014).

This is particularly so here, where the parties specifically agreed to arbitration under rules

that grant the arbitrators wide latitude to manage discovery in order to achieve an efficient and

economical result.[10]  This bargain must be enforced.  Gemco benefited from this arrangement in

numerous ways, including the limited nature of its own document production and the expeditious

resolution of the case.  Its objection now "reflects an instance of the phenomenon . . . in which

parties agree to arbitrate and confer upon arbitrators maximum decisional authority so as to

liberate them from rigid judicial formalities and application of strict rules of law, and then fault

them if they do exercise their latitude to stray from those presumably discarded procedural or

substantive constraints."  *Commercial Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford*, 526 F.

Supp. 2d 424, 430-31 (S.D.N.Y. 2007).[11]

Further, Gemco was given "more than an adequate opportunity to present evidence to

support its case."  *Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12 Civ. 283, 2013 WL 789642, at

*9 (S.D.N.Y. Mar. 4, 2013).  The tribunal "allowed Gemco access to reams of internal

documents" going back many years regarding sales, costs of goods, marketing expenses, rebates,

and many other categories of data relating to the calculation of profits and damages; Gemco

---

[10]  Specifically, in resolving the proceedings before Judge Engelmayer regarding the Agency Agreement's authenticity, Gemco "stipulated and agreed" that the arbitration would be administered by the American Arbitration Association "pursuant to its Rules for Commercial Arbitration."  Ex. B; *see also* Ex. K (Procedural Order).  Those rules make clear, under the heading "Authority of arbitrator," that "[t]he arbitrator[s] shall manage any necessary exchange of information among the parties," and that they properly do so "with a view to achieving an efficient and economical resolution of the dispute."  AAA Commercial Rule 22.  The Commercial Rules also provide "[t]he arbitrator[s] shall have the authority to issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient and economical resolution of the case," including by imposing reasonable limitations on the production of "electronic and other documents if the parties are unable to agree."  AAA Commercial Rule 23.  Moreover, at the preliminary hearing, which was memorialized in the Panel's Procedural Order 1 and Report of Preliminary Hearing, "[t]he Panel and both sides agree[d] that there needs to be focused disclosure of documents, consistent with Rule 22 of the Commercial Arbitration Rules of AAA."  Ex. K (Procedural Order) 2-3.

[11]  *See also Nat'l Football League Mgmt. Council*, 2016 WL 1619883, at *14 ("Had the parties wished to allow for more expansive discovery, they could have bargained for that right.  They did not, and there is simply no fundamental unfairness in affording the parties precisely what they agreed on."); *Landmark Ventures, Inc.*, 619 F. App'x at 39 (holding that party had "failed to establish any ground for vacating the award" where Landmark's "primary contentions concern the Arbitrator's decision to strike six of its ten document requests and to refuse it an extension of time to engage an expert," and the document requests were struck "because they were not properly tailored under the governing rules of discovery"); *Matthew v. Papua New Guinea*, No. 09 Civ. 3851, 2009 WL 4788155, at *3 (S.D.N.Y. Dec. 9, 2009), *aff'd*, 398 F. App'x 646 (2d Cir. 2010) ("Petitioner's argument that the arbitrator committed misconduct by refusing to hear evidence pertinent and material to the controversy also fails" because, *inter alia*, the governing arbitration rules granted the arbitrator wide latitude to "conduct the arbitration in whatever manner [he] considers appropriate").

"was permitted to cross-examine [Al Maya's] top executives on all of these pertinent subjects"; and the tribunal "listened to [many] witnesses over [many] days of testimony and accepted [numerous] exhibits relevant to these subjects." *Id*.  Under these circumstances, it is abundantly clear that "[d]enying [Gemco] individual [document] requests did not render the tribunal guilty of misconduct or result in fundamental unfairness, as is required by the FAA and the Convention to set aside the award." *Id*.  Gemco "had expansive access to discovery materials, well in excess of the scope of discovery usually permitted in arbitration.  [It] cannot turn this discovery dispute into an issue of fundamental due process sufficient to set aside the award." *Id*.

**B.      Gemco's Concession That It Received All Of The Information It Requested In "Summary" Format, And Pursued Additional Documents Only To "Verify" The Information In The Summary, Dooms Its Motion.**

Even if the denial of a single discovery request could theoretically constitute "misconduct" justifying vacatur in some extreme circumstance, it could not on the facts presented here, where the discovery request at issue was for back-up documents underlying evidence the complaining party indisputably received in summary format.  Numerous courts in this district have denied motions to vacate premised on exactly this basis, because it is well within the arbitrators' broad discretion to decide that a summary document suffices.  Gemco's concession that it did in fact receive the information it sought, albeit in summary format, Gemco Ex. M at 1 (stating that Al Maya "has complied with the Panel's order" to produce "full profit and loss statements for any and all entities that sold American Garden products"), and that it wanted additional documents only to "verify" the figures in the P&L statements, Gemco Ex. K at 2, is thus fatal to its motion to vacate.

For example, in a recent decision, Judge Sweet made clear that "[a]n arbitrator's decision to accept summaries of data instead of requiring production of voluminous underlying data is not misconduct." *Stifel, Nicolaus & Co. v. Forster*, 2015 WL 509684, at *5.  Similarly, in an oft-

cited decision, Judge Marrero made clear that "it is inaccurate to characterize the Arbitrator's action as 'refusing' to hear pertinent and material evidence necessary to resolve the issue he decided," where "the Arbitrator, as [the party challenging the award] acknowledges, admitted documents containing summaries itemizing the volumes of invoices and receipts that [the challenger] contends should have been part of the record during the hearing." *Fairchild Corp. v. Alcoa*, 510 F. Supp. at 288 (S.D.N.Y. 2007). This is exactly what happened here. Gemco acknowledged at the time, Gemco Exs. K & M—and again acknowledges in its moving papers, *see, e.g.*, Gemco Br. 7-9—that Al Maya produced, and the arbitrators received, a "Four Page Summary" (the P&Ls) of the financial data that Gemco contends should have been part of the record during the hearing, and that it was denied only certain "underlying documents" that it sought for verification purposes. It is also undisputed that Al Maya produced voluminous supporting records going to sales, costs, rebates, and many other categories, and that the Panel heard testimony on the issue of damages from the expert and from fact witnesses. Accordingly:

> [T]he record was not entirely devoid of proof sufficient for arbitration purposes to support acceptance of [the] claims. The Arbitrator could have fairly relied upon such other evidence as a whole to justify a confirmable decision. As such, at that point in the proceeding the Arbitrator could properly have declined to consider the additional material and rejected it as cumulative. In essence, [the challenger's] argument on this point actually narrows to a challenge to the sufficiency of the evidence that the Arbitrator did weigh and chose to credit in reaching his decision. The case law makes clear, however, that an arbitrator has discretion to admit or reject evidence and determine what materials may be cumulative or irrelevant.

*Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 287-91 (S.D.N.Y. 2007) (citations omitted). The arbitrators' decision to accept the profit and loss data in the form of a verified P&L statement, and to not require Al Maya to produce all of the voluminous documentation underlying that P&L statement, is the exact kind of evidentiary decision that the Supreme Court has made clear "[is] to be left to the arbitrator." *United Paperworkers*, 484 U.S. at 40.

**C.    The Arbitrators Had Multiple Reasonable Bases For Denying Gemco's Request For "Line-By-Line" Back-Up Data—Namely, That It Was Untimely, Unduly Burdensome, And Cumulative.**

"To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so only for the purpose of discerning whether a colorable basis exists for the panel's award." *Wallace*, 378 F.3d at 193; *see also Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) ("barely colorable" justification sufficient to confirm award); Gemco Br. 14 (same).  Thus, courts have made clear that if "there exists a reasonable basis" for the arbitrators' decision to exclude evidence, a court should not disturb the award. *Ottawa Office Integration Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 219-20 (S.D.N.Y. 2001) (internal quotation marks and citation omitted) (denying motion to vacate and granting motion to confirm).  There were multiple, independent reasonable bases for the arbitrators' decision.

First, Gemco's request was untimely.  The parties exchanged discovery requests and responses (including objections) in accordance with the procedural schedule set by the Panel. Over Al Maya's protest, on June 17, 2015 the Panel instructed it to "produce profit and loss statements for the entities that sold American Garden brand products from January 1, 2010 through December 31, 2013."  Gemco Ex. I.  It also set a deadline of July 1 to bring any further discovery disputes to the Panel.  There is no dispute that Al Maya complied with the Panel's instructions by providing P&L statements for the Al Maya division where all American Garden profits and losses are accounted for.  *See* Al Maya July 6 Letter at 2; Gemco Ex. M (acknowledging that Al Maya had "complied with the Panel's order" to produce P&L statements).  In fact, while the Panel had instructed Al Maya to produce P&Ls for 2010 through 2013, Al Maya produced them for 2004 through year-to-date 2015.  Having received what it asked for and more than what the Panel instructed be produced, Gemco then sought even more

information—namely, the underlying, back-up documents it now complains were denied.  But as Al Maya urged the Panel in response, "Al Maya respectfully requests that Gemco not be permitted to supplement its document requests at this late date."  Gemco Ex. L at 3.  That alone provides a reasonable basis for the Panel's denial of the request.

Second, Gemco's request was cumulative.  As Al Maya explained in its letter responding to Gemco's new request, the P&L statements allowed Gemco to determine Al Maya's incremental costs for the relevant products, which is exactly what Gemco had told the Panel was what it needed to determine incremental lost profit.  Gemco Ex. L at 3; Gemco Ex. F at 3.  Gemco did not—and does not now—disagree with this assertion.  Rather, Gemco argues only that it "need[ed] the underlying information . . . to verify the accuracy and completeness of the allocations" made in the P&L statements.  Gemco Ex. M; *see also* Gemco Ex. K (asserting that without additional data Gemco could not "verify either the accuracy or the completeness" of the P&L statements); Gemco Br. 8 (July 8 order left Gemco "unable to verify independently the accuracy and completeness of the financial information contained in the Four Page Summary," and to evaluate its methodologies and categorizations).  But as the cases make clear, the fact that the Panel (and Gemco) had what Gemco itself characterizes as a "summary" of the information means that it was reasonable for the Panel to conclude that the underlying documentation was cumulative.  Not only that, the request was largely "duplicative of other information that Al Maya ha[d] already produced."  Gemco Ex. L at 3 n.2.  Indeed, at the hearing both experts confirmed that they were able to substantially verify the figures in the profit and loss statements using the data produced.  *See* Gemco Ex. V (Day 3 Tr.) at 791:19-792:20 (Gemco's expert); *id.* at 655:23-656:3 (Al Maya's expert).

Third, the request was unduly burdensome.  Even in federal litigation, it is appropriate under the Federal Rules of Evidence for a district court to weigh the burden of a given discovery request against the potential benefit, and to deny requests that are unduly burdensome, both specifically and taking account of the overall cost and scale of discovery in the case.  It is also appropriate for a court to take into account notions of reciprocity.  These considerations are all-the-more appropriate when *arbitrators* adjudicate discovery disputes, given the central value placed on "the simplicity, informality, and expedition of arbitration," *Mitsubishi Motors*, 473 U.S. at 628, and triply so when the governing arbitration rules and the parties' agreements explicitly call for limited discovery and considerations of burden and reciprocity.  Here, Gemco served on Al Maya five separate sets of document requests comprising over 100 separate parts and sub-parts, and in response Al Maya produced "millions of sales-related data points from 2004 through 2013 regarding quantity, cost, sales price, and profit, as well as granular rebate, marketing, listing fees" data—far more than is normally permitted in an arbitration setting. Gemco Ex. L at n.2; *see also* n.1 (summarizing voluminous Al Maya productions).  Meanwhile, Gemco had not produced "a single document that support[ed] the accuracy or completeness of any of its sales or profit figures, despite the fact that Al Maya sought supporting documentation," and had in fact previously represented to the Panel that it would be "overly burdensome" for *Gemco* to produce back-up documentation sought by Al Maya with respect to its own payroll, accounting, marketing, and sales expenses.  *Id*. at 3 & n.2.  Against that backdrop, Al Maya vociferously objected to Gemco's new request for voluminous back-up documents to the P&L statements, arguing that Gemco's request "ignores any notion of reciprocity in the discovery process" and that its new request for this "extensive and burdensome documentation from Al

Maya should be denied." Gemco Ex. L at 3. It was eminently reasonable for the Panel to accept

that argument.

In its cross-petition, Gemco relies heavily on the Second Circuit's decision in *Tempo*

*Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997), but it wildly misconstrues that decision.

As numerous courts within the Southern District have made clear, *Tempo Shain* "stands for the

proposition that *absent a reasonable basis*, an arbitration panel's refusal to grant an adjournment

of a hearing due to a medical emergency constitutes misconduct if it results in the exclusion of

material evidence prejudicing the parties in the dispute." *Mandell v. Reeve*, No. 10 Civ. 6530,

2011 WL 4585248, at *6 (S.D.N.Y. Oct. 4, 2011) (emphasis added), *aff'd*, 510 F. App'x 73 (2d

Cir. 2013).[12] Here, in contrast, "[t]he arbitrator had a reasonable basis for his decision." *Ottawa*

*Office Integration Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 221 (S.D.N.Y. 2001)

(distinguishing *Tempo Shain* and granting motion to confirm award); *accord, e.g.*, *Krantz &*

*Berman, LLP v. Dalal*, No. 09 Civ. 9339, 2011 WL 1810490, at *4 (S.D.N.Y. May 12, 2011)

("The arbitrator's denial of [the] discovery request . . . is not analogous to the situation in *Tempo*

*Shain*. The arbitrator was entitled to conclude that he could assess the [damages], without resort

to [the] records" sought), *aff'd*, 472 F. App'x 76 (2d Cir. 2012).[13]

---

[12] *Accord, e.g., Bisnoff v. King*, 154 F. Supp. 2d 630, 638 (S.D.N.Y. 2001) ("[T]he essential proposition for which *Tempo Shain* stands is that, *absent a reasonable basis for its decision*, a refusal to grant an adjournment of a hearing, due to a medical emergency, constitutes misconduct under the Federal Arbitration Act if it excludes the presentation of evidence material and pertinent to the controversy thus prejudicing the parties in the dispute and making the hearing fundamentally unfair.") (emphasis added); *Tempo Shain*, 120 F.2d at 21 (finding fundamental unfairness justifying vacatur only because "there was no reasonable basis for the arbitration panel to determine that [the witness's] omitted testimony would be cumulative").

[13] The two other cases Gemco relies on are no more helpful to it. Gemco describes the cases as ones in which "the courts vacated an arbitration award after an arbitration panel deprived one party of evidence central and dispositive to the dispute." But that description is inaccurate. In *Chevron*, the district court *refused* to vacate an arbitration award because, while the arbitrator's refusal to postpone the hearing so a party could obtain and review copies of evidence relied on at the hearing by the plaintiff was erroneous, the complaining party had not met its heavy burden of demonstrating prejudice. *Chevron Transportation Corp. v. Astro Vencedor Compania Naviera, S.A.*, 300 F. Supp. 179 (S.D.N.Y. 1969). Here, there was no unfair surprise to Gemco as Al Maya did not submit or rely on the evidence Gemco sought. Moreover, as in *Chevron*, Gemco has not come close to meeting its heavy burden of demonstrating prejudice from the Panel's exercise of its broad discretion to admit

As Judge Daniels explained in rejecting a very similar challenge to an arbitration award based on the arbitration panel's denial of a party's "request for production of evidence concerning the value of" certain investments that the challenging party contended was "highly relevant and material":

> It was within the arbitration panel's broad discretion to determine that the requested materials would have been irrelevant and/or unduly burdensome for Respondents to produce. . . . Respondents had already produced the profit and loss data for Petitioner's trading activities as of April 30, 2007 . . . *Petitioner was not denied a fundamentally fair hearing by the arbitration panel's refusal to compel Respondents to produce [further] evidence* . . . . [T]he scope of inquiry afforded Petitioner was certainly sufficient to enable the arbitration panel to make an informed decision, and to provide Petitioner a fair and reasonable opportunity to be heard.

*Finkelstein v. UBS Glob. Asset Mgmt. (US) Inc.*, No. 11 CV 00356 GBD, 2011 WL 3586437, at *9 (S.D.N.Y. Aug. 9, 2011) (emphasis added) (internal quotation marks and citations omitted).

### D. The Award Cannot Be Vacated Because The Panel's Discovery Ruling Did Not Prejudice, And In Fact Benefitted, Gemco.

Accepting for the sake of argument that the Panel's denial of Gemco's document request could be characterized as the arbitrators' "refusal" to hear material evidence and that it had no reasonable basis for denying Gemco's request, its motion to vacate would still be meritless because Gemco "has not met its burden" of submitting "evidence of clear prejudice" resulting

and exclude evidence. *See infra* Pt. I.D. Similarly, in *Home Indemnity v. Affiliated Food Distributions, Inc.*, the court vacated an arbitration award because the arbitrators had refused to permit *any* discovery without a surety bond, and they summarily rendered a decision without reviewing the underlying claims. No. 96-CV-9707, 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997). That extreme circumstance of the total denial of discovery and a summary disposition met the FAA's high bar for arbitrator "misconduct" in "refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). The facts here could not be further from those in *Home Indemnity*. *See Inficon*, 2016 WL 1611379, at *6 (S.D.N.Y. Apr. 19, 2016) ("*Home Indemnity* involved a successful challenge to an interim arbitral award issued without reviewing the underlying claim. . . . *Home Indemnity* does not deal with questions regarding how arbitrators considered the evidentiary record and does not constitute an exception to the law established by the cases cited above . . . ."). Moreover, both *Chevron* and *Home Indemnity* predate the extensive case law cited above from the Supreme Court, the Second Circuit, and S.D.N.Y. courts reinforcing the arbitrators' authority to make evidentiary rulings and restricting the role of courts in reviewing those rulings. It is not surprising, then, that the Second Circuit in *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, No. 15-2801, 2016 WL 1619883 (2d Cir. Apr. 25, 2016) reversed a district court decision that had relied on *Chevron* and *Home Indemnity* in vacating an arbitration award based on the arbitrator's decision not to compel the production of certain documents. Gemco's arguments rooted in those cases are entirely without merit.

from the denial of its request for "line-by-line" backup.  *See Postlewaite v. McGraw-Hill, Inc.*,
No. 98 Civ. 0611, 1998 WL 751687, at *4 (S.D.N.Y. Oct. 28, 1998), *aff'd sub nom.*, 10 F. App'x
16 (2d Cir. 2001).  Thus, as in *Chevron*—Gemco's lead case in its brief, *see* Gemco Br. 20-21—
the court should deny the challenging party's motion to vacate because it has not adequately
"show[n] prejudice" resulting from the adverse procedural decision.  300 F. Supp. at 181.[14]

Here, there was no prejudice to Gemco in the denial of its discovery request for two
independent reasons.  In fact, Gemco ironically ended up benefitting from the ruling.  First, as
Gemco concedes, Al Maya produced the P&L statements Gemco requested, which contained
summary incremental cost data and all of the other categories of data that Gemco sought.
Gemco sought the underlying records only to "verify" the information it had already received.
Moreover, as Gemco concedes, it received "other documentary evidence" in discovery that it
relied on—and that the Panel credited—in calculating the lost profits award.  Not only that, both
parties' experts were able to verify the substantial majority of the information in those statements
using the extensive data and documentation produced by Al Maya.  That Gemco did not receive
every piece of back-up documentation for every line item in the P&L statements does not mean
that it was prejudiced when both experts were able to verify substantial portions of the data, and
when all of the underlying data that both experts examined checked-out against the P&L
statements.  Gemco nevertheless asserts—based on nothing but conjecture—that it was
prejudiced because it is theoretically possible that some of the underlying documentation would
have been inconsistent with the data in the P&L statements, and theoretically might have

---

[14]  *See also, e.g., Mandell*, 2011 WL 4585248, at *6 (S.D.N.Y. Oct. 4, 2011) (denying motion to vacate and
granting motion to confirm where arbitrator's decision did not "result in the exclusion of material evidence
prejudicing the parties in the dispute"), *aff'd*, 510 F. App'x 73 (2d Cir. 2013); *Bisnoff v. King*, 154 F. Supp. 2d
630, 638 (S.D.N.Y. 2001) (refusal to grant adjournment does not constitute misconduct unless it "excludes the
presentation of evidence material and pertinent to the controversy thus prejudicing the parties in the dispute and
making the hearing fundamentally unfair"); *Inficon*, 2016 WL 1611379, at *7 ("[E]ven if the Panel erroneously
excluded evidence, this would not in itself provide a basis for vacating the award absent substantial harm.").

lowered its damages figures.  But the extensive data that both experts examined did not suggest that this was the case.  This kind of speculation unmoored to record evidence is insufficient to meet the high bar for demonstrating prejudice under FAA § 10(a)(3).

Second, even if the court were to accept, *arguendo*, Gemco's speculation that the unproduced documentation would have been inconsistent with the P&L statements, Gemco would still fail to demonstrate prejudice because the Panel adopted *Gemco's expert's* lost profits figure, which discounted the damages due Al Maya for her purported inability to "verify" all of the figures in the P&Ls.  As a result, Al Maya's damages were millions of dollars lower than they would have been had the Panel ordered Al Maya to produce the underlying data.  In other words, Gemco ended up reaping the benefit of the Panel's denial of this discovery request by taking and receiving the damages reduction it now says the additional underlying documents might have revealed.  Gemco could not be prejudiced—let alone substantially harmed—by a discovery ruling that it ended up being the beneficiary of, at Al Maya's expense.  It is ironic that this discovery ruling is the one and only basis on which Gemco seeks to justify vacatur.

## II.    Al Maya's Petition To Confirm The Award Should Be Granted.

Under the FAA, "a court must confirm an arbitration award unless it is vacated, modified or corrected as prescribed in §§ 10 and 11." *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 78 (2d Cir. 2012).  Because Gemco has not met its heavy burden of proving that the award should be vacated under § 10(a)(3), Al Maya's petition to confirm the award "must be granted." *Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12 Civ. 283, 2013 WL 789642, at *9 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 557 F. App'x 66 (2d Cir. 2014).

## CONCLUSION

Al Maya's petition to confirm the award should be granted and judgment should be entered thereon.  Gemco's cross-petition to vacate the award should be denied.

Dated: New York, New York
      May 19, 2016

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Mitchell A. Karlan

Mitchell A. Karlan
Akiva Shapiro
200 Park Avenue
New York, New York 10166-0193
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

*Attorneys for Petitioner*
Al Maya Trading Establishment