USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/17/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AL MAYA TRADING ESTABLISHMENT,

Petitioner,

v.

GLOBAL EXPORT MARKETING CO.,
LTD.,

Respondent.

---

No. 16-CV-2140 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Petitioner Al Maya Trading Establishment ("Al Maya") petitions for confirmation of an arbitral award entered in its favor against Respondent Global Export Marketing Co., Ltd. ("GEMCO") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"), 21 U.S.T. 2517, *codified at* 9 U.S.C. § 201 *et seq.* GEMCO moves to vacate the award pursuant to 9 U.S.C. § 10(a)(3).[1] Al Maya contends that GEMCO's motion is frivolous and intended to cause delay, and thus moves for sanctions pursuant to Federal Rule of Civil Procedure 11. For the reasons set forth below, the Court confirms the award. GEMCO's motion to vacate and Al Maya's motion for sanctions are denied.

---

[1] Although GEMCO's motion is styled as a "cross-petition," "[a] request for vacatur must be made in the form of a motion," *Kruse v. Sands Bros. & Co.*, 226 F. Supp. 2d 484, 486 (S.D.N.Y. 2002), and both parties have treated it as such.

## BACKGROUND

Al Maya is a United Arab Emirates ("UAE") company with its headquarters and principal place of business in Dubai. Pet. ¶ 3; Karlan Decl. Ex. A ("Final Award") ¶ 10.[2] It is a family-owned business that distributes food products in the UAE and elsewhere. Pet. ¶ 3; Final Award ¶ 10. GEMCO is a New York domestic business corporation with its principal place of business in New York City. Pet. ¶ 4; Final Award ¶ 10. GEMCO, which is also a family-owned company, is in the business of exporting foodstuffs and related products. Pet. ¶ 5; Final Award ¶ 10.

On June 16, 1999, Al Maya and GEMCO entered into an Agency Agreement pursuant to which Al Maya served as the exclusive distributor of GEMCO's American Garden ("AG") line of food products in the UAE. Final Award ¶¶ 1–2; Karlan Decl. Ex. C (the "Agreement").[3] The duration of the Agreement was two years, but it provided for automatic renewal unless either party chose to terminate it no later than three months before the renewal date. Final Award ¶ 15; Agreement ¶ 8. Paragraph 9 of the Agreement provided that "[a]ll disputes and or differences that may arise between the parties [to the Agreement] out of or in relation to or in connection with [the Agreement] or for any breach thereof shall be settled through arbitration." Agreement ¶ 9.

The relationship between Al Maya and GEMCO deteriorated over time due to a variety of alleged breaches of the Agreement by Al Maya. *See* Final Award ¶¶ 17–26. In late 2012, GEMCO decided to terminate its relationship with Al Maya and began negotiating with other distributors. *Id.* ¶ 26. The Agreement was set to renew automatically on June 16, 2013. *See* Final Award ¶ 15; Agreement ¶ 8. However, despite the fact that "[t]he reasons underlying [GEMCO's] decision had

---

[2] All citations to declarations and briefs herein refer to declarations and briefs submitted in connection with Al Maya's petition and GEMCO's motion to vacate.

[3] Al Maya also served as GEMCO's exclusive distributor of Diamond aluminum foil in the UAE pursuant to an oral agreement. *See* Final Award ¶ 14.

all materialized prior to early 2013," GEMCO did not terminate the Agreement prior to the March 16, 2013 termination deadline. Final Award ¶ 26. Instead, GEMCO stopped fulfilling Al Maya's orders during the summer of 2013, and informed Al Maya during a meeting on September 26, 2013 that GEMCO was terminating the Agreement. *Id.* ¶¶ 27–28.

Al Maya asserted breach of contract and tortious interference claims, and, on January 14, 2014, filed a petition to compel arbitration in the United States District Court for the Southern District of New York. Final Award ¶ 3; Karlan Decl. Ex. D. The petition to compel arbitration was assigned to the Honorable Paul A. Engelmayer. Pet. ¶ 18. Despite initially disputing the authenticity of the Agreement, *see* Final Award ¶ 3, on August 25, 2014, GEMCO signed a Stipulation and Order agreeing to arbitrate Al Maya's claims, and conceded "[t]he authenticity, validity, and enforceability of the [Agreement]," at least for purposes of the arbitration, Karlan Decl. Ex. B. The Stipulation and Order provided that the American Arbitration Association (the "AAA") would administer the arbitration pursuant to its Rules for Commercial Arbitration and that New York law would apply in the arbitration as to all procedural and substantive issues. *Id.* Judge Engelmayer so-ordered the Stipulation and Order on August 27, 2014. *Id.*

On September 4, 2014, Al Maya filed a Demand for Arbitration with the AAA, which GEMCO answered on September 22, 2014. Pet. ¶¶ 24–25; Karlan Decl. Exs. E–F. On April 3, 2015, a three-member arbitration panel (the "Panel") was confirmed. Pet. ¶ 26; Final Award ¶ 4. The Panel held a preliminary hearing by telephone on April 22, 2015 during which "[t]he parties confirmed that the Commercial Arbitration Rules of AAA/ICDR, and New York substantive and procedural law [would] appl[y]" to the arbitration. Final Award ¶ 5. During the preliminary hearing, "[t]he parties . . . indicated that they wish[ed] to reach a speedy and efficient resolution

3

of their dispute," and that "there need[ed] to be focused disclosure of documents, consistent with Rule 22 of the Commercial Arbitration Rules of AAA." Shapiro Decl. Ex. K. [4]

The present dispute is about the scope of discovery. On June 1, 2015, after reviewing Al Maya's previous productions, GEMCO asked Al Maya to provide "Profit and Loss Statements for the entity (or entities) that sold AG . . . and for any related entity where expenses relating to the sales, marketing and distribution of AG may appear." Mawji Decl. Ex. E. GEMCO explained that these statements would "allow [GEMCO] to determine [Al Maya's] incremental costs, which [GEMCO] need[ed] in order to determine the lost incremental profit, if any, that Al Maya would have earned resulting from any lost incremental AG sales." *Id.* After Al Maya failed to produce the requested materials, GEMCO sent a letter to the Panel seeking an order compelling Al Maya to produce them, explaining that they were necessary for an accurate calculation of Al Maya's lost incremental profit. *Id.* Ex. F. On June 17, 2015, the Panel ordered Al Maya to "produce profit and loss statements for the entities that sold [AG] brands products" from 2010 through 2013, as well as any "documents reflecting" "expenses or costs relating to the sales, marketing, and distribution of [AG] products in the UAE." *Id.* Ex. I. The Panel gave the parties until July 1, 2015 to "request a ruling on the production of *focused* additional documents" if their experts believed that they needed them. *Id.* However, the Panel reminded the parties that they were participating in "an arbitration under the Commercial Arbitration Rules, not a domestic litigation." *Id.*

On June 30, 2015, Al Maya produced the profit and loss statements (the "P&Ls"). Shapiro Decl. ¶ 14. The P&Ls covered the period from 2004 to 2015 (year-to-date), and were generated

---

[4] Rule 22 provides, *inter alia*, that "[t]he arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses."

from Al Maya's financial accounting system. *Id.*; Mawji Decl. Ex. V ("Hr'g Tr.") 763:2–8, 782:3–8. On July 1, 2015, GEMCO wrote a letter to the Panel explaining that "GEMCO ha[d] no ability to verify the accuracy and completeness of the allocations" in the P&Ls "below the gross profit level," and asking the Panel to compel Al Maya to provide various supporting documentation. Mawji Decl. Ex. K. On July 6, 2015, Al Maya opposed this request as untimely, cumulative, and unduly burdensome. *See id.* Ex. L. On July 7, 2015, GEMCO responded to Al Maya's letter via e-mail, conceding that the P&Ls complied with the Panel's June 17 order, but arguing that GEMCO needed the additional information that it was requesting "to verify the accuracy and completeness of the allocations" in the P&Ls. *Id.* Ex. M. On July 8, 2015, the Panel denied GEMCO's request without explanation (the "July 8 Ruling"). *See id.* Ex. N.

The Panel ultimately found that GEMCO had breached the Agreement. Final Award ¶ 60. Both parties offered expert testimony on the calculation of lost profits. *Id.* ¶ 61. The Panel adopted the analysis of GEMCO's expert, Maureen Loftus, partly because of the extensive reliance that Al Maya's expert, Carlyn Irwin, had placed on the P&Ls, which the Panel viewed as having "significant problems." *See id.* ¶¶ 61, 63, 65–69.[5] The Panel thus adopted the damages calculation submitted by Loftus, who had adjusted her lost profits analysis to account for perceived "anomalies" and "understatements" in the P&Ls. *Id.* ¶ 69; Mawji Decl. Ex. R, at 19.

On March 4, 2016, the Panel issued the Final Award. The Panel awarded Al Maya a total of $5,733,023.52, which was compromised of $4,254,000 in damages, $379,023.52 in pre-judgment interest, and $1,100,000 in legal fees and costs. Pet. ¶ 35; Final Award at 22.

---

[5] The Panel stated, *inter alia*, that it was "not appropriate" for Irwin to have relied on the P&Ls given that they were prepared by an Al Maya employee who was not made available for cross-examination. Final Award ¶ 68.

## DISCUSSION

Two issues are before the Court: (1) whether to confirm or vacate the Final Award; and (2) whether to sanction GEMCO pursuant to Rule 11. The Court addresses each in turn.

## I.   CONFIRMATION OF THE AWARD

Al Maya's petition for confirmation of the Final Award is governed by the New York Convention and the FAA. The Convention "governs agreements that are commercial and . . . not entirely between citizens of the United States," such as the Agreement in this case. *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011) (quotation marks omitted). "The [FAA] implements the New York Convention and brings with it a national policy favoring arbitration of claims that parties contract to settle in that manner." *Id.* (citation and quotation marks omitted). Under the New York Convention, any party to the arbitration may apply for a court order confirming the award, which the court "shall confirm . . . unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award" under the Convention. 9 U.S.C. § 207. Where an arbitration is conducted in the United States, "any defenses available under the FAA's domestic provisions are also available." *Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016); *accord Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir. 1997) ("We read Article V(1)(e) of the Convention to allow a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate that arbitral award.").

"The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference . . . ." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013) (quotation marks omitted). This serves "the twin goals of arbitration, namely settling disputes efficiently and

avoiding long and expensive litigation." *Id.* (quotation marks omitted). "[T]he burden of proof necessary to avoid confirmation of an arbitration award is very high," and the award should be enforced "as long as there is a barely colorable justification for the outcome reached." *Id.* at 103–04 (quotation marks omitted).  Applying these standards to the instant case, the Court denies GEMCO's motion to vacate and confirms the Final Award.

### A.   GEMCO's Motion to Vacate

GEMCO's motion to vacate is based solely on the July 8 Ruling.  GEMCO contends, much as it did during the arbitration, that the July 8 Ruling deprived GEMCO of evidence that was "critical and potentially dispositive on the issues of damages." Resp't's Mem. at 1.[6]  GEMCO thus urges the Court to vacate the Final Award pursuant to 9 U.S.C. § 10(a)(3), which provides for vacatur "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  The Court declines to do so.

Vacatur pursuant to 9 U.S.C. § 10(a)(3) "is warranted . . . only if 'fundamental fairness is violated.'" *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).  "It is well settled that procedural questions that arise during arbitration, such as which witnesses to hear and which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts." *Id.* (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987)).  This is especially so where the parties have agreed to limited discovery and granted the arbitrators flexibility with respect to the manner in which the

---

[6] This contention is supported by a declaration of Maureen Loftus that GEMCO submitted in connection with its motion to vacate. Al Maya argues that the Court should strike this declaration, as it is not part of the arbitration record, *see* Pet'r's Mem. at 11 n.7, but the issue is moot. The declaration is largely duplicative of assertions made during the course of the arbitration, and, in any event, does not persuade the Court that vacatur is appropriate.

arbitration is conducted. *See id.* at 547 ("Had the parties wished to allow for more expansive discovery, they could have bargained for that right . . . . [T]here is simply no fundamental unfairness in affording the parties precisely what they agreed on."); *Matthew v. Papua New Guinea*, No. 09-CV-3851 (LTS), 2009 WL 4788155, at *3 (S.D.N.Y. Dec. 9, 2009) (denying vacatur under 9 U.S.C. § 10(a)(3) in part because the arbitral rules "permit[ted] the arbitrator to conduct the arbitration in whatever manner [he] consider[ed] appropriate" (second alteration in original) (quotation marks omitted)), *aff'd*, 398 F. App'x 646 (2d Cir. 2010) (summary order).

There is no indication that fundamental fairness was violated here. The parties agreed at the beginning of the arbitration to a "focused disclosure of documents, consistent with Rule 22 of the Commercial Arbitration Rules of AAA." Shapiro Decl. Ex. K. GEMCO's request for supporting documentation came relatively late in the discovery process, *see id.* Ex. L, and the Panel granted GEMCO's request for the P&Ls, *see* Mawji Decl. Ex. I. The Panel could have reasonably concluded that GEMCO's request for documentation was untimely, unduly burdensome, and/or cumulative.[7] Earlier in the arbitration, GEMCO had itself objected to the production of supporting documentation for financial statements as unduly burdensome. *See id.* Ex. L, at 3. At the time of the July 8 Ruling, Al Maya had already produced "over 800 megabytes of raw sales, cost, and profit data." *Id.* at 2 n.1. Al Maya's prior productions allowed both parties' experts to verify much of the information in the P&Ls. *See* Hr'g Tr. 655:23–656:3, 791:19–792:20.

In such a situation, "[a]n arbitrator's decision to accept summaries of data instead of requiring production of voluminous underlying data is not misconduct." *Stifel, Nicolaus & Co. v. Forster*, No. 14-CV-6523 (RWS), 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015) (citing

---

[7] Although the Panel did not provide any reasoning for the July 8 Ruling, Al Maya had raised each of these purported bases to the Panel before it rendered its decision. *See* Mawji Decl. Ex. L.

*Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 288 (S.D.N.Y. 2007)). GEMCO was given ample opportunity to rebut Al Maya's damages calculations. The Panel reviewed reports and heard live testimony from both parties' experts on the subject of lost profits, and ultimately sided with GEMCO's expert over Al Maya's. *See* Final Award ¶¶ 8, 61, 69. Even though Loftus was limited in her ability to "get behind" some of the numbers in the P&Ls, Hr'g Tr. 690:6–9, GEMCO's suggestion that discovery of additional documentation would have resulted in a more favorable outcome for GEMCO is wholly speculative.

The precedent that GEMCO cites in favor of vacatur is distinguishable. In *Tempo Shain*, an arbitration panel refused to adjourn a hearing to accommodate a medical emergency of a key witness. 120 F.3d at 17–18. The Second Circuit held that vacatur was appropriate because "there was no reasonable basis for the arbitration panel to determine that [the witness's] omitted testimony would be cumulative." *Id.* at 20; *accord Mandell v. Reeve*, Nos. 10-CV-6530, 10-CV-7389 (RJS), 2011 WL 4585248, at *6 (S.D.N.Y. Oct. 4, 2011) ("*Tempo Shain* . . . stands for the proposition that absent a reasonable basis, an arbitration panel's refusal to grant an adjournment of a hearing due to a medical emergency constitutes misconduct if it results in the exclusion of material evidence prejudicing the parties in the dispute."), *aff'd*, 510 F. App'x 73 (2d Cir. 2013) (summary order). By contrast, the Panel in this case had a reasonable basis for its decision, as explained above.

In *Home Indemnity Co. v. Affiliated Food Distributors, Inc.*, No. 96-CV-9707 (RO), 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997), the panel refused to allow one of the parties *any* discovery unless they first posted security in the full amount that was at issue in the arbitration—an action much broader than the denial of a single document request. *Cf. Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12-CV-283 (GBD), 2013 WL 789642, at *9 (S.D.N.Y. Mar. 4, 2013) (failing to identify

9

any "federal case . . . where a court vacated an arbitral award because the panel denied one party a document request"), *aff'd*, 557 F. App'x 66 (2d Cir. 2014) (summary order).

The most factually similar case that GEMCO cites is *Chevron Transport Corp. v. Astro Vencedor Compania Naviera, S.A.*, 300 F. Supp. 179 (S.D.N.Y. 1969), but that too is distinguishable. In *Chevron*, one of the parties to an arbitration was denied "perhaps the most important items of documentary evidence in any maritime controversy"—"the ship's logs." *Id.* at 181. Although "extracts" of the logs were made available at the arbitration hearing, the court observed that "[t]he provision of excerpted portions of the document supplied by one party can place the disadvantage[d] party at the mercy of the adversary's judgment as to relevancy." *Id.* That concern is less present here, where there is no dispute that the P&Ls were generated from Al Maya's accounting system. Hr'g Tr. 763:2–8, 782:3–8. Moreover, even in *Chevron*, the court denied the motion to vacate because there was "nothing in the record which would permit a finding that undisclosed parts of the logs contained information which would have been helpful to [the moving party] in its submission to the panel." 300 F. Supp. at 182.[8] GEMCO has similarly failed to demonstrate prejudice. After all, the Panel adopted the lost profits calculation of GEMCO's expert. *See* Final Award ¶ 69.

### B.   Modification of the Award

Al Maya contends that the Panel's summary of the award inadvertently "leaves out" $74,000 in damages that were "clearly awarded." Pet'r's Mem. at 12 n.8. The Court agrees, and

---

[8] The *Chevron* court initially denied the motion to vacate without prejudice, 300 F. Supp. at 182, but later denied it on the merits after finding that "there was no substantial prejudice . . . as a result of the unavailability of the complete port logs," *Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S.A.*, No. 69-CV-572, 1969 WL 173716 (S.D.N.Y. July 24, 1969).

will adjust the award accordingly. *See* 9 U.S.C. § 11(a) (authorizing modification of an award "[w]here there was an evident material miscalculation of figures").[9]

### C.     Post-Award Interest

Al Maya also seeks post-award interest. The Court grants this request. "Absent persuasive argument to the contrary, post-award, prejudgment interest is available for judgments rendered under the Convention and is presumed to be appropriate." *P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00-CV-7120 (RLC), 2001 WL 38282, at *3 (S.D.N.Y. Jan. 16, 2001) (citing *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 153–54 (2d Cir. 1984)). As no such argument has been made here, the Court finds that pre-judgment interest is appropriate, and will apply the state statutory rate of nine percent. *See Seed Holdings, Inc. v. Jiffy Int'l AS*, 5 F. Supp. 3d 565, 591 (S.D.N.Y. 2014) ("[C]ourts in the Second Circuit generally apply the state statutory rate—in New York, nine percent—even where, as here, federal law governs enforcement of the arbitration award." (citation and quotation marks omitted)). Post-judgment interest is mandatory. *See* 28 U.S.C. § 1961; *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004).

## II.     AL MAYA'S MOTION FOR SANCTIONS

Al Maya also asks the Court to sanction GEMCO, arguing that the motion to vacate was frivolous and made for an improper purpose. The Court will not award sanctions. Although the Court was unpersuaded by GEMCO's motion, its arguments were not frivolous. Rule 11 is "targeted at situations where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend,

---

[9] The Panel awarded Al Maya $4,109,000 in lost profits for AG products, $136,000 in lost profits for non-AG products, $74,000 in lost profits for orders placed by Al Maya but not fulfilled prior to the termination of the Agreement, and $9,000 in connection with outstanding debit notes. Final Award ¶¶ 69, 72, 73, 81. The sum of these amounts is $4,328,000—$74,000 less than the amount stated in the Panel's summary of the award. *See id.* at 22.

modify or reverse the law as it stands." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir. 1988) (quotation marks omitted).   GEMCO's arguments were not so unfounded.

## CONCLUSION

For the foregoing reasons, the Final Award is confirmed as modified, and GEMCO's motion to vacate and Al Maya's motion for sanctions are denied.  GEMCO shall pay Al Maya $5,807,023.52 plus pre-judgment and post-judgment interest.   Pre-judgment interest shall be calculated at a rate of nine percent from March 4, 2016 until the date of entry of judgment.  Post-judgment interest shall be calculated in accordance with 28 U.S.C. § 1961.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:    March 17, 2017
          New York, New York

Ronnie Abrams
United States District Judge

12